FRANSON, Acting P.J.
*458 Plaintiff Gregory Smith is an indigent, self-represented prison inmate pursuing medical malpractice claims against a doctor and a nurse practitioner employed by the Pleasant Valley State Prison (Pleasant Valley). He filed a motion for the appointment of counsel, arguing the trial court should consider (1) the factual complexity of the issues relating to pain medication, dosage and his spinal condition; (2) his limited ability to investigate the facts, obtain discovery and get expert witnesses; (3) the legal complexity of the case; and (4) his showing that, on their face, his claims had merit. The trial court noted the right of criminal defendants to appointed counsel, cited the statute governing the appointment of public defenders, but stated it was without authority to appoint an attorney for a plaintiff in a civil case, and denied the motion. Subsequently, the trial court granted defendants' motion for summary judgment because Smith, as he predicted, did not obtain a medical expert's declaration contradicting the opinion of defendants' expert that the care provided Smith met the applicable standard of care.
The California Constitution and Penal Code section 2601, subdivision (d) provide indigent prisoners with the right of meaningful access to the courts to prosecute civil actions. One of the discretionary measures available to protect the right of access to the courts is the appointment of counsel. Consequently, the trial court had the discretionary authority to appoint counsel. The court's statement that it was without the authority to appoint counsel did not recognize the existence and scope of its discretionary authority.
The exercise of a trial court's discretion is guided by a three-step inquiry *190 established in published appellate decisions. ( Apollo v. Gyaami (2008) 167 Cal.App.4th 1468, 1485-1487, 85 Cal.Rptr.3d 127 ( Apollo ); Wantuch v. Davis (1995) 32 Cal.App.4th 786, 792, 39 Cal.Rptr.2d 47 ( Wantuch ).) First, the trial court determines whether the prisoner is indigent. Second, the court determines whether the lawsuit involves a bona fide threat to the inmate's personal or property interests. If both conditions are satisfied, the trial court must consider the measures available to protect appellant's right of meaningful access to the courts, including the appointment of counsel. Where the indigent prisoner's civil action is bona fide and his or her access to the court is being impeded, a trial court must provide a remedy; it may not choose to do nothing.
Here, the trial court's denial of the motion to appoint counsel was not based on an informed exercise of its discretion. Consequently, the appropriate remedy is to remand the matter to the trial court for an exercise of its discretionary authority within the framework of the three-step inquiry.
*459 We publish a portion of this decision because it resolves issues not reached in Apollo or Wantuch. First, the discretionary appointment of an expert pursuant to Evidence Code section 730 is among the measures available to trial courts to ensure indigent prisoner litigants are afforded meaningful access to the courts. Second, trial courts are responsible for recognizing their discretionary authority to appoint counsel for indigent civil litigants who request the appointment of counsel, even when the indigent litigant does not cite cases such as Apollo and Wantuch and does not refer to the right of access to the courts as the basis for that discretionary authority. Third, an indigent civil litigant may argue on appeal that the right of meaningful access to the courts provides a basis for appointing counsel despite not raising that specific argument in the trial court.
We therefore reverse the judgment and remand for further proceedings.
FACTS
Parties
Smith was born in 1956. His present incarceration began in 2004 and he is serving a sentence of 39 years to life, with eligibility for parole. The present litigation arises from the medical care Smith received at Pleasant Valley, where he arrived in August 2011, after being transferred from the Richard J. Donovan Correctional Facility in San Diego County (Donovan). Smith remained at Pleasant Valley until December 2013, when he was transferred to Folsom State Prison (Folsom).
The defendants named in Smith's pleading were P. Brazelton, Warden of Pleasant Valley; Dr. U. Baniga; Nurse Practitioner I. Ogbuehi; J. Clark Kelso; Dr. A. Duenas; and L. Zamora. Only Dr. Baniga, Ogbuehi, and Warden Brazelton were served with Smith's amended complaint.
Smith's Medical Conditions
Prior to Smith's arrival at Pleasant Valley, he was injured in two separate cellmate assaults. After the first cellmate assault, medical staff at Donovan coordinated two surgeries on Smith's right thumb and wrist in 2008 and 2009. Donovan medical staff also prescribed gabapentin for pain.
In June 2010, Smith experienced a sudden onset of right knee pain. Donovan medical staff identified a lateral meniscus tear and preliminarily evaluated Smith for surgery.
In September 2010, the second cellmate assault occurred, injuring Smith's left shoulder. Donovan medical staff and Smith *191 prioritized treatment of the *460 injured shoulder over the treatment of Smith's knee. In September 2010, the first surgery on Smith's left shoulder was conducted. In February 2011, Donovan medical staff coordinated a second surgery on Smith's shoulder to remove the displaced anchor. Donovan medical staff also prescribed morphine for pain.
While treating Smith's shoulder, a CT scan revealed an old compression fracture of Smith's L3 vertebrae. Smith was given a back brace, but no significant treatment was provided for his back.
To summarize, while at Donovan, Smith experienced medical problems with his right hand, right knee, left shoulder, and his spine. The symptoms from these problems included pain. This lawsuit addresses the medical care Smith received at Pleasant Valley after leaving Donovan in August 2011. Details about that medical care are set forth in the unpublished portion of this opinion addressing defendants' motion for summary judgment.
PROCEEDINGS
Smith has represented himself throughout this proceeding, which has included exhausting administrative remedies, filing a claim under the Government Claims Act ( Gov. Code, § 810 et seq. ), and pursuing this lawsuit. The litigation began in October 2013 when Smith filed a civil complaint and an application for waiver of court fees. In April 2014, after various motions had been filed and some withdrawn, Smith filed an amended complaint asserting medical malpractice claims. His amended complaint is the operative pleading for purposes of this appeal.
The amended complaint sets forth headings for three causes of action, all of which included the description "(Negligent or Wrongful Act or Omission)." Additional descriptions of "(Defendant's owe Plaintiff a legal duty of care)"; "(Defendant's Breach of Duty)"; and "(Proximately Cause Pain and Suffering)" were included in Smith's headings for the first, second, and third causes of action, respectively.
In broad terms, Smith alleged defendants breached their legal duty to provide reasonable and competent medical care by failing to give necessary medication; prescribing inappropriate medication; delaying examination and treatment; and failing to provide access to a specialist that his particular condition required. He also alleged the "failure to summon immediate medical care ... is serious enough [to] amount to the wanton and unnecessary infliction of pain and suffering." In more specific allegations, Smith asserts his shoulder cannot be repaired due to delays in treatment; the morphine he was taking for pain was inappropriately lowered and then *461 withdrawn completely; the gabapentin he was taking was inappropriately withdrawn; and Dr. Baniga refused his request to be removed from Ogbuehi's care and assigned another nurse practitioner. The pain being treated related to Smith's shoulder injury, a compression fracture of his L3 vertebrae, and a tear of the lateral meniscus in his right knee.
In June 2014, the three defendants served with the amended complaint filed their answer. Subsequently, Warden Brazelton was dismissed with prejudice pursuant to a written request for dismissal signed by Smith and defense counsel. Consequently, this lawsuit has been narrowed to the claims against Dr. Baniga and Ogbuehi.
Motion for Appointment of Counsel
In April 2015, Smith filed a motion for appointment of counsel. The motion asserted (1) Smith was unable to afford counsel; (2) the issues involved in the case were *192 complex and would require medical expert testimony; (3) Smith had little or no access to drug manufacturers and their data, specialists of the spine, or the Food and Drug Administration; and (4) Smith had limited knowledge of the law. Smith's memorandum of points and authorities cited federal cases and discussed factors addressed in those opinions-namely, factual complexity, plaintiff's ability to investigate, plaintiff's ability to present his claim, legal complexity, and the merits of the case.
In May 2015, the trial court issued an order (1) stating it had received Smith's ex parte motion for appointment of counsel, (2) mentioning the right to appointed counsel in criminal cases and lack of authority to appoint counsel for a plaintiff in a civil proceeding, and (3) denying the request. The court's rationale is described in part I.B.2., post.
Motion for Summary Judgment
In December 2016, defendants filed a motion for summary judgment asserting "the undisputed material facts establish that Nurse Practitioner Ogbuehi and Dr. Baniga's provision of medical services to [Smith] did not fall below the standard of care." The separate statement of undisputed material facts was organized into 10 sections that addressed plaintiff's (1) shoulder condition, (2) back condition, (3) knee condition, (4) morphine prescription, (5) gabapentin prescription, (6) oxcarbazepine prescription, (7) amitriptyline claims, (8) request for a new provider, (9) causal link, and (10) the lawsuit. The motion was supported by declarations of a medical expert and a deputy attorney general. Ogbuehi and Dr. Baniga did not submit declarations to support their motion for summary judgment.
*462 Dr. Duenas's Declaration
Defendant's medical expert, Dr. A. Duenas received a Doctor of Medicine degree from the Universidad Autonoma de Guadalajara School of Medicine in 1979. She is certified in internal medicine by the American Board of Internal Medicine. Dr. Duenas began working for the California Department of Corrections and Rehabilitation in 2008 and remained in its employ through the date of her declaration. She was serving as the chief physician and surgeon at the Pleasant Valley State Prison when Smith arrived and continued in that role until February 2012, when she transferred to another institution.[1]
Dr. Duenas's opinion on the adequacy of medical care provided to Smith by Dr. Baniga and Ogbuehi was based on (1) her review of medical records of the care provided to Smith during his incarceration from 2004 through the date of her declaration; (2) her direct participation in Smith's case while chairing the Clinical Case Management Review Committee, which evaluated Smith on January 11, 2012; (3) the administrative grievance filed by Smith relating to care given by Ogbuehi, which Dr. Duenas granted in part at the second level of review and initiated a confidential staff inquiry;[2] (4) her review of nonmedical records provided by defense counsel and included in the papers supporting the motion for summary judgment; and (5) her professional *193 experience, training, and knowledge. Dr. Duenas's declaration set forth her "professional opinion that Ogbuehi and Dr. Baniga's medical practices met applicable standards of care. Further, it is my professional opinion, to a degree of medical probability, that no action or inaction by Nurse Practitioner Ogbuehi or Dr. Baniga caused plaintiffs claimed harm." These opinions were supported by the details set forth and analyzed in paragraphs 14 through 93, inclusive, of her declaration, which covered approximately 25 pages.
Here, we set forth some of Dr. Duenas's views about the treatment of Smith's left shoulder and Smith's allegations relating to that treatment. Dr. Duenas states Smith is wrong in claiming that the delays by Dr. Baniga or Ogbuehi delayed the surgery and caused his supraspinatus tendon tear to be unrepairable. Dr. Duenas states: "The date upon which the tendon could have been accessible in surgery before retraction is not known." She notes Dr. Y. N. Paik of the Pacific Orthopedic Medical Group did not call for immediate *463 surgery after his February 2012 consultation with Smith or his May 2012 evaluation and then states the following opinion: "Plaintiff cannot establish that surgery would have been successful prior to August 1, 2012-in fact, plaintiff cannot establish that surgery would have been successful prior to his initial evaluation by Ogbuehi in October 2011."
Opposition
On April 27, 2017, Smith filed a response to defendants' separate statement of undisputed material facts, which included exhibits totaling over 120 pages.[3] The proof of service attached to this response refers to a declaration of Smith in opposition to defendants' motion, but such a declaration does not appear in the appellate record.
Smith responded "undisputed" to many of the 130 numbered paragraphs of material facts asserted by defendants. However, Smith also responded "disputed" to many of the assertions of fact. For example, defendants' separate statement described an October 25, 2011, meeting between Smith and Ogbuehi and a January 11, 2012, meeting between Smith and the Clinical Case Management Review Committee, stating the main source of Smith's pain was his shoulder. Smith disputes these statements and asserts he was suffering pain in his left shoulder, lower back pain and right knee pain, but the left shoulder pain was the only complaint with which the nurse and committee were concerned.
Another example of a factual dispute relates to paragraph 37 of defendants' separate statement, which described excerpts of Smith's medical records relating to his back condition. In his response, Smith disputed "the accuracy of these medical records." The accuracy of Smith's medical records also was addressed in paragraph 124 of defendants' separate statement, which asserted Smith was asked during his deposition if the medical records he reviewed accurately reflected the medical treatment he received ,[4] and he answered "yes."
In the section of defendants' separate statement addressing Smith's back condition, *194 paragraphs 41, 45, 47, 48, 50, 51, 52, 54 and 56 describe nine meetings between Smith with Ogbuehi between June 2012 and December 2013. Those paragraphs assert the medical records reflect Ogbuehi evaluated *464 Smith and reported "a negative straight leg raise test." Smith disputes the completeness and correctness of the leg raise test performed, stating he was never on his back for the test and Ogbuehi never raised his leg herself. Smith asserts that, instead, he was asked to raise one leg at a time while seated in a chair. Smith notes there was no documentation on how the test was performed and states, "same incorrect procedures month after month, same incorrect results." Smith supported his claim that the test was performed incorrectly by submitting a printout of an article on the straight-leg test for evaluating low back pain from Web MD.[5]
In the part of defendants' separate statement addressing Smith's morphine prescription, defendants refer to medical records from a January 9, 2013, meeting between Smith and Ogbuehi for a primary care evaluation and state the records reflect Ogbuehi noted a "steady gait." Smith's response asserts this statement by Ogbuehi was false and misleading because a steady gait was never proven and she "never walk[ed] with plaintiff to see how his walk is." Smith supports his assertion by referring to medical records describing him as walking into a "room with a significant gait limping, using his cane."
Smith's response to defendants' separate statement disputes other factual assertions made by defendants. Those disputes are not described here as the foregoing examples are sufficient for purposes of this appeal.
Trial Court's Decision
On April 27, 2017, a hearing was held on the motion for summary judgment, the same day Smith's response to defendants' separate statement was filed. Smith and defense counsel appeared using CourtCall. The court granted the motion, adopting its tentative ruling as its order, previously issued on April 11, 2017. The ruling stated defendant had met their burden by showing that nothing Ogbuehi or Baniga did caused Smith's harm. The court referred to Dr. Duenas's opinion that defendants' medical practices met the applicable standards of care and stated the medical records showed that Dr. Baniga did not refuse Smith's request to be assigned to a different medical provider.
In May 2017, the trial court entered a judgment in favor of Ogbuehi and Dr. Baniga in the amount of $1,330.13 and decreed that Smith would take nothing. Smith filed a timely appeal.
*465 DISCUSSION
I. APPOINTMENT OF COUNSEL
Appellant's opening brief included a heading asserting the denial of appointment of counsel for medical expert was an abuse of discretion. Because his request of the trial court was for appointment of counsel, not for the appointment of an expert, our review focuses on the issues relating to the appointment of counsel. Under California law, the appointment of counsel for an indigent prisoner pursuing a civil action is an aspect of the right of *195 access to the courts. ( Apollo , supra , 167 Cal.App.4th at p. 1484, 85 Cal.Rptr.3d 127, citing Yarbrough v. Superior Court (1985) 39 Cal.3d 197, 200-201, 216 Cal.Rptr. 425, 702 P.2d 583 ( Yarbrough ).) Accordingly, an overview of the principles that define the right to access to the courts is provided.
A. Overview of Right to Access to the Courts
1. General Principles
Access to the courts is "a right guaranteed to all persons by the federal and state Constitutions." ( Jersey v. John Muir Medical Center (2002) 97 Cal.App.4th 814, 821, 118 Cal.Rptr.2d 807.)[6] The constitutional right of access to the court extends to prisoners. ( In re Jesusa V. (2004) 32 Cal.4th 588, 601, 10 Cal.Rptr.3d 205, 85 P.3d 2 ["there is no dispute that prisoners have a constitutional right of access to the courts"].) In addition to these constitutional foundations, California state prisoners have the statutory right "[t]o initiate civil actions" as plaintiffs. ( Pen. Code, § 2601, subd. (d).) This statute has been interpreted "to include within its scope the right to be afforded meaningful access to the courts to prosecute those civil actions." ( Apollo , supra , 167 Cal.App.4th at p. 1483, 85 Cal.Rptr.3d 127, italics added.) Under this statute, "a prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests." ( Ibid. , citing Wantuch , supra , 32 Cal.App.4th at p. 792, 39 Cal.Rptr.2d 47.)
The decisions in Apollo and Wantuch are significant because they involved indigent prisoners who were plaintiffs in civil actions. Earlier decisions of the California Supreme Court addressing the right of access to the courts dealt *466 with indigent prisoners who were defendants in civil actions. (See Yarbrough, supra , 39 Cal.3d 197, 216 Cal.Rptr. 425, 702 P.2d 583 ; Payne v. Superior Court (1976) 17 Cal.3d 908, 132 Cal.Rptr. 405, 553 P.2d 565 ( Payne ).)
In Wantuch , a self-represented inmate sued his former criminal defense attorney for malpractice and other causes of action. ( Wantuch , supra , 32 Cal.App.4th at pp. 789-790, 39 Cal.Rptr.2d 47.) When the inmate failed to appear at a status conference, the trial court denied the inmate's motion for appointed counsel, struck his pleadings, and entered judgment against him. ( Id. at p. 790, 39 Cal.Rptr.2d 47.) The Second District determined the trial court abused its discretion in striking the pleadings and entering judgment against the inmate. ( Ibid. ) The court reversed the judgment and remanded for further consideration of the inmate's right of access to the courts. ( Wantuch , supra , 32 Cal.App.4th at pp. 790, 795-796, 39 Cal.Rptr.2d 47.)
In Apollo , a self-represented prisoner brought a civil action against the prison food administrator and two medical staff members for damages resulting from defendants' refusal to provide a medically prescribed special diet for his chronic diverticulitis of the colon. ( Apollo , supra , 167 Cal.App.4th at p. 1471, 85 Cal.Rptr.3d 127.) Two defendants obtained a dismissal *196 for lack of proper service and the other prevailed on a motion for summary judgment. ( Ibid. ) On appeal, the prisoner challenged the dismissals and the entry of summary judgment and, as an initial matter, argued he had been denied his right of meaningful access to the courts based on his status as an indigent, unrepresented prisoner litigant. ( Id. at p. 1482, 85 Cal.Rptr.3d 127.) The First District regarded the prisoner's access to the courts as the crucial issue in the case, reversed the judgment, and remanded for further proceedings on the question of his right of meaningful access. ( Id. at pp. 1482, 1488, 85 Cal.Rptr.3d 127.)
In Apollo , the First District's analysis of the potential deprivation of meaningful access to the courts followed the reasoning set forth in Wantuch. The court stated it "must determine whether, considering appellant's status as an unrepresented prisoner-litigant, the trial court exercised its discretion in a manner protective of his statutory right to meaningful access to the courts to prosecute bona fide civil claims." ( Apollo , supra , 167 Cal.App.4th at p. 1484, 85 Cal.Rptr.3d 127.) The court reviewed the record presented and determined the trial court gave little, if any, consideration to the appellant's right of meaningful access to the courts. ( Id. at p. 1485, 85 Cal.Rptr.3d 127.) Consequently, the First District remanded for further proceedings and directed the trial court to (1) "first determine whether appellant is indigent"; (2) next determine whether the lawsuit involved a bona fide threat to his personal or property interests, and (3) consider what measures were available to protect appellant's right of meaningful access to the courts if the first two conditions (i.e., indigency &
*467 bona fide claim) existed. ( Id. at pp. 1485-1486, 85 Cal.Rptr.3d 127.) This three-step inquiry was based on the remand instructions given in Wantuch. (Wantuch , supra , 32 Cal.App.4th at p. 796, 39 Cal.Rptr.2d 47.)
A nonexclusive list of measures available to trial courts to ensure indigent prisoner litigants are afforded meaningful access to the courts (including plaintiffs in bona fide civil actions) are set forth in both Apollo and Wantuch. Those measures included (1) deferral of the action until the prisoner is released; (2) appointment of counsel for the prisoner ; (3) transfer of the prisoner to court to attend hearings or the trial; (4) utilization of depositions in lieu of personal appearances; (5) holding of trial in prison; (6) conducting status and settlement conferences, hearings on motions and other pretrial proceedings by telephone; (7) propounding of written discovery; and (8) use of closed circuit television or other modern electronic media. ( Apollo , supra , 167 Cal.App.4th at p. 1483, 85 Cal.Rptr.3d 127, quoting Wantuch , supra , 32 Cal.App.4th at pp. 792-793, 39 Cal.Rptr.2d 47.) This list also allows for the " 'implementation of other innovative, imaginative procedures.' "[7] ( Apollo, supra , at p. 1483, 85 Cal.Rptr.3d 127.) In deciding the appropriate measure or measures to assure access, the relevant circumstances include, without limitation, the practicality and effectiveness of the various measures available to protect the right of access to the courts. (See Wantuch , supra , 32 Cal.App.4th at p. 793, 39 Cal.Rptr.2d 47.)
After the briefing in this appeal was completed, the California Supreme Court *197 decided a case involving the right of access to the courts of an indigent plaintiff prisoner pursuing medical malpractice claims. ( Jameson v. Desta (2018) 5 Cal.5th 594, 234 Cal.Rptr.3d 831, 420 P.3d 746 ( Jameson ).) In that case, the right to access to meaningful appellate review of the trial court's decision was affected by the absence of a court reporter at the trial court proceedings and the resulting lack of a verbatim record of those proceedings. ( Id. at p. 608, 234 Cal.Rptr.3d 831, 420 P.3d 746.) As background, the Supreme Court described various ways it and the Courts of Appeal had protected the ability of indigent civil litigants to obtain meaningful access to the courts, including " Payne [, supra ,] 17 Cal.3d 908, [132 Cal.Rptr. 405, 553 P.2d 565] ... [right of indigent prisoner who is a defendant in a civil case to be provided meaningful access to judicial process, including representation by counsel if necessary]; Yarbrough [, supra ,] 39 Cal.3d 197, [216 Cal.Rptr. 425, 702 P.2d 583] [explaining trial court's responsibilities under Payne ]." ( Jameson , supra , 5 Cal.5th at p. 605.) Based on our Supreme Court's citation of its prior decisions involving the appointment of counsel, we conclude those decisions remain good law. Although *468 Apollo and Wantuch were not cited in Jameson , we conclude the analysis and the result reached in Jameson supports the conclusion that the Supreme Court did not overrule those cases by implication. Therefore, we conclude Apollo and Wantuch remain good law on the subject of an indigent prisoner's right to meaningful access to the courts.
2. Appointment of Counsel
California decisions identify the appointment of counsel as one of the measures available to a trial court to assure an indigent prisoner is provided meaningful access to the courts. However, neither the California Constitution nor Penal Code section 2601, subdivision (d) have been interpreted to require the appointment of counsel for indigent plaintiff litigants as a matter of right. ( Apollo , supra , 167 Cal.App.4th at p. 1483, 85 Cal.Rptr.3d 127 [while appointment of counsel for a prisoner is a measure for affording meaningful access to the courts, the right does not necessarily mandate a particular measure such as the appointment of counsel].)[8] Instead, the choice of measures to safeguard a prisoner's right, as a plaintiff or defendant, to meaningful access to the courts to prosecute a civil action is committed to the trial court's discretion. ( Apollo , supra , at pp. 1483-1484, 85 Cal.Rptr.3d 127 ; see 3 Mushlin, Rights of Prisoners (5th ed. 2017) § 12:24, p. 221 [in almost all cases where a self-represented inmate requests counsel, "the issue will be whether the court should exercise its discretion to appoint counsel"].) The scope of that discretionary authority is defined in part by the following:
"[A] trial court does not have discretion to choose no remedy in cases where the prisoner's civil action is bona fide and his or her access to the courts is being impeded. Indeed, the California Supreme Court has suggested that, in certain cases, appointment of counsel may be the only remedy available to protect a prisoner litigant's right of meaningful court access: 'In an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property *198 rights.' ( Yarbrough , supra , 39 Cal.3d at pp. 200-201 [216 Cal.Rptr. 425, 702 P.2d 583].)" ( Apollo , supra , 167 Cal.App.4th at p. 1484 [85 Cal.Rptr.3d 127].)[9]
Another aspect of the discretionary authority relates to how a trial court should balance the right of meaningful access to the court against the important principles that (1) indigent litigants "are entitled to the same, but *469 no greater, rights than represented litigants" and (2) "trial courts have a duty in the name of public policy to expeditiously process civil cases." ( Apollo , supra , 167 Cal.App.4th at p. 1487, 85 Cal.Rptr.3d 127.) The First District stated these important principles "must yield to the even greater principles of providing in propria persona litigants with meaningful access to the courts and of deciding bona fide civil actions on their merits." ( Apollo , supra , at p. 1487, 85 Cal.Rptr.3d 127.)
3. Federal Approach to Appointing Counsel
Smith's motion for the appointment of counsel did not cite a decision by any court of the State of California. Instead, he cited federal decisions. (See Moore v. Mabus (5th Cir. 1992) 976 F.2d 268, 272 [reversed denial of motion for appointment of counsel for indigent plaintiff alleging constitutional violations, stating "district court should promptly appoint qualified counsel"]; Terrell v. Brewer (9th Cir. 1991) 935 F.2d 1015, 1017 [district court's denial of motion for appointment of counsel pursuant to 28 U.S.C. § 1915 reviewed for an abuse of discretion]; McKeever v. Israel (7th Cir. 1982) 689 F.2d 1315, 1319 [district court failed to exercise its discretion under 28 U.S.C. § 1915(d) because it did not recognize its authority to appoint counsel for plaintiff].) Because of the overlap between the federal and state constitutional rights to meaningful access to the courts, we briefly summarize the federal decisions.
The federal statute authorizing prisoners to bring civil actions in forma pauperis provides that "[t]he court may request an attorney to represent any person unable to afford counsel." ( 28 U.S.C. § 1915(e)(1).) As stated in the cases cited by Smith, this provision grants federal district courts the discretionary authority to appoint counsel for indigent civil plaintiffs. However, appointment of counsel is not simply a matter of routine. Many federal courts have interpreted this provision to authorize the appointment of counsel for indigent civil litigants when "exceptional circumstances" exist. (E.g., Byrd v. Maricopa County Board of Supervisors (9th Cir. 2017) 845 F.3d 919, 925 ; Jackson, supra , 811 F.2d at p. 261 ["district court is not required to appoint counsel unless the case presents 'exceptional circumstances' "]; see 3 Mushlin, Rights of Prisoners, supra , § 12:24, p. 230, fn. 34.) In determining the existence of exceptional circumstances, federal district courts consider "(1) the type and complexity of the case; [¶] (2) whether the indigent is capable of adequately presenting his case; [¶] (3) whether the indigent is in a position to investigate adequately the case; ... [¶] (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination" and (5) "whether appointed counsel would aid in the efficient and equitable disposition of the case." ( Jackson , supra , 811 F.2d at p. 262.)
*199 *470 4. Relevant Circumstances
The next two legal questions we resolve relate to the trial court's determination of whether an inmate's "access to the courts is being impeded." ( Apollo , supra , 167 Cal.App.4th at p. 1484, 85 Cal.Rptr.3d 127.) First, we conclude the determination of whether access is being impeded is committed to the trial court's discretion. This determination is intertwined with the question of the appropriate remedy or remedies to secure meaningful access because the resolution of each often will involve an evaluation of the same facts and circumstances. (See Wantuch , supra , 32 Cal.App.4th at p. 793, 39 Cal.Rptr.2d 47 [factors to be considered in determining appropriate remedy to secure access].) Therefore, it is internally consistent to treat both inquiries as committed to the trial court's discretionary authority.
Second, we conclude a trial court must examine the totality of the circumstances when making the discretionary determination of whether an inmate's access is being impeded. It follows that the relevant circumstances include, without limitation, the factors listed in the federal decisions for determining whether exceptional circumstances exist in a particular case.[10] Accordingly, trial courts should consider those factors when weighing the totality of the circumstances before deciding whether an inmate's access to the courts is being impeded.
B. Smith's Motion and Its Denial
1. Smith's Arguments
Smith's motion for the appointment of counsel did not refer to the constitutional and statutory right of access to the courts and did not cite Apollo , Wantuch , or any other California decision. Instead, Smith relied on federal cases and asserted the trial court should consider the factual complexity of the case; the ability of the inmate to investigate the facts; the ability of the inmate to get discovery and expert witnesses; and the complexity of the legal issues. Smith argued the issues involving his medical condition and need for pain medication were factually complex and probably would require *471 him to present a medical expert witness, cross-examine any expert witnesses called by defendants, or both. Smith stated he had no ability to investigate medical data on drugs, spinal stenosis, or its treatment. Smith argued the appointment of counsel was supported by the fact that he was an indigent inmate who did not complete high school and had no legal training. Smith stated presenting his legally complex medical malpractice claims to a jury required greater skill than he had or could develop. In addition, he argued his claims had sufficient merit on their face to weigh in favor of appointing counsel.
2. The Trial Court's Decision
The trial court's written order denying Smith's ex parte motion for the appointment of counsel stated Smith had "failed to *200 provide any authority that would support the request that this court appoint an attorney in this civil action." The court noted the constitutional right to counsel for criminal defendants and the establishment of the office of the public defender to provide that representation. The court referred to Government Code section 27706 as setting forth the grounds for appointing the public defender and concluded none of those grounds were present in this case. The court then reiterated that "[t]he authority cited by [Smith] has no application to this case" and concluded it was "without authority to appoint an attorney in this case." As a result, the court denied Smith's motion.
C. Arguments Presented on Appeal
1. Initial Appellate Briefing
Smith's opening brief contends the "denial [of] appointment of counsel for medical expert" was an abuse of discretion. Defendants contend the trial court did not abuse its discretion by failing to appoint Smith an expert because he never asked the trial court for an expert and, even if a motion had been made, Smith did not establish the court had the authority to provide him with an expert at no cost. We agree with defendants and will therefore not address the expert appointment issue further.
2. Supplemental Briefing Request
In May 2019, this court requested supplemental briefing under Government Code section 68081 of issues relating to the trial court's order denying the appointment of counsel. Based on Apollo , Wantuch and the California Supreme Court cases addressing the appointment of counsel for indigent defendants in civil cases ( Yarbrough, supra , 39 Cal.3d 197, 216 Cal.Rptr. 425, 702 P.2d 583 ;
*472 Payne, supra , 17 Cal.3d 908, 132 Cal.Rptr. 405, 553 P.2d 565 ), we requested the parties to assume that, in certain circumstances, "California trial courts have the discretionary authority to appoint counsel for indigent plaintiffs who are state prisoners." Our questions asked the parties, among other things, (1) how we should interpret the trial court's order in the event the available record was unclear as to whether the trial court conducted the three-step inquiry described in Apollo and Wantuch before denying the motion for appointment of counsel and (2) what the appropriate remedy should be if the trial court misunderstood the nature and scope of its discretionary authority to appoint counsel.
3. Defendants' Supplemental Brief
Defendants' supplemental brief stated the trial court did not conduct the three-step inquiry used in Apollo and Wantuch in deciding Smith's motion for appointment of counsel. Defendants contended that when interpreting the order this court should "presume the trial court knew of its obligations under Wantuch and Apollo but found them inapplicable because Mr. Smith had raised only an appointment-of-counsel issue, and not a court-access issue." In a related argument, defendants contend that, even if one assumes the trial court misunderstood the nature and scope of its discretionary authority, there is no need to remand with directions for the trial court to conduct that inquiry because "Smith failed to make a prima facie showing of a denial of meaningful access to the courts." In other words, defendants contend there was no duty to conduct the three-step inquiry because Smith's arguments and showing did not trigger that duty.
Defendants also argue that nothing in Wantuch , Apollo or Jameson supports the conclusion that a trial court is obligated to conduct the three-step inquiry every time an indigent prisoner-plaintiff moves for appointment of counsel. Furthermore, defendants *201 contend Smith's situation is not similar to the extraordinary difficulties faced by the litigants in Wantuch , Apollo and Jameson. In defendants' view, Smith sought a court-appointed attorney not to protect his right to prosecute the action and obtain appellate review, but because he wanted to improve his chances of success in the litigation.[11]
4. Smith's Supplemental Brief
Smith's supplemental brief agreed with defendants' statement that the trial court did not conduct the three-step inquiry used in Apollo and Wantuch in deciding the motion for appointment of counsel. However, Smith disagrees *473 with defendants' contention as to the reason. Defendants contended Smith failed to make a prima facie showing of a denial of meaningful access to the courts. Smith argues he made a prima facie showing and this court can interpret the trial court's "statement about the absence of authority as meaning it did not conduct that three-step inquiry." As to the appropriate appellate relief, Smith contends this court should reverse the trial court's order and instruct it to conduct the three-step inquiry and appoint counsel for purpose of a medical expert. Smith reasserts his argument that a medical expert is necessary to establish the required standard of care and that defendants deviated from it. Smith states an appointed attorney could investigate the misrepresentation of medical records and the untrustworthy documents submitted to the court with the motion for summary judgment.
D. Interpreting the Trial Court's Order
The first step in our analysis of the trial court's order addresses how to interpret that order. Specifically, was the trial court aware of its discretionary authority to appoint counsel and did the trial court actually exercise that discretion in denying the motion?
1. Presumption of Correctness
"[I]t is a fundamental principle of appellate procedure that a trial court [order or] judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." ( Jameson , supra , 5 Cal.5th at pp. 608-609, 234 Cal.Rptr.3d 831, 420 P.3d 746.) Stated another way, all presumptions are indulged to support the trial court order or judgment "on matters as to which the record is silent, and error must be affirmatively shown." ( Denham v. Superior Court (1970) 2 Cal.3d 557, 564, 86 Cal.Rptr. 65, 468 P.2d 193 ( Denham ).) The presumption of correctness and the allocation of the burden to the appellant is part of the constitutional doctrine of reversible error. ( Ibid. ; see Cal. Const., art. VI, § 13.) This doctrine and the principles derived from it are the foundation for our interpretation of the trial court's written order denying Smith's motion for appointment of counsel. Accordingly, we consider whether the presumption of correctness applies.
2. Rules Governing Interpretation of Order
Generally, the "interpretation of an appellate opinion is governed by the *202 rules of construction that apply to any other writing." (16 Cal.Jur.3d (2012) Courts, § 328, p. 880.) Similarly, "[t]he meaning and effect of a judgment is determined according to the rules governing the interpretation of *474 writings generally." ( People v. Landon White Bail Bonds (1991) 234 Cal.App.3d 66, 76, 285 Cal.Rptr. 575.) We conclude the same rules apply to the interpretation of a written order issued by a trial court. Under those rules, the entire order is taken by its four corners and construed as a whole. ( Ibid. ) Also, the order's language is viewed in light of the facts and the issues before the court, and each statement is considered in its proper context. (See 16 Cal.Jur.3d, supra , Courts, § 328, p. 880.)
3. Presumption Does Not Apply
As noted, the presumption of correctness applies to "matters as to which the record is silent." ( Denham , supra , 2 Cal.3d at p. 564, 86 Cal.Rptr. 65, 468 P.2d 193.) Here, the order was not silent on the matter of the court's authority to appoint counsel. The order discussed the constitutional right of criminal defendants to be represented and the appointment of the public defender under Government Code section 27706. The order stated Smith was "not subject to criminal prosecution" and no statutory ground for appointing a public defender was present. Thus, the court was not silent on the matter of its authority to appoint counsel. Consequently, we do not presume the court was aware of its discretionary authority to appoint counsel and actually exercised that discretion.
4. Trial Court Was Unaware of Its Discretionary Authority
Having concluded the presumption of correctness does not apply, we address what the trial court meant when it said it was "without authority to appoint an attorney in this case." Defendants argue this statement means the court concluded Smith failed to make a prima facie showing of a denial of access and, based on this result, the court reached the further conclusion that it had no duty to conduct the three-step inquiry described in Apollo and Wantuch. Based on the contents of the order as a whole and the context provided by Smith's motion, we interpret the order to mean the court did not recognize it had the discretionary authority to appoint counsel. That discretionary authority is described in Apollo and Wantuch and is derived from Penal Code section 2601, subdivision (d) and the constitutional protections given the right of access to the courts. The court made no reference to Penal Code section 2601, Apollo , Wantuch , or the California Supreme Court cases addressing the appointment of counsel for indigent defendants in civil actions. (See Yarbrough, supra , 39 Cal.3d at pp. 200-201, 216 Cal.Rptr. 425, 702 P.2d 583 ; Payne, supra , 17 Cal.3d at p. 924, 132 Cal.Rptr. 405, 553 P.2d 565.) More generally, the court did not mention civil litigants' constitutional right of access to the courts. Therefore, we interpret the trial court's order to mean the court did not recognize its discretionary authority.
"[A] court that is unaware of its discretionary authority cannot exercise its informed discretion." ( *475 People v. Brown (2007) 147 Cal.App.4th 1213, 1228, 54 Cal.Rptr.3d 887 [sentencing discretion]; see Doan v. State Farm General Ins. Co. (2011) 195 Cal.App.4th 1082, 1105, 125 Cal.Rptr.3d 793 [trial court was unaware of its discretionary authority under statute; the matter was remanded to trial court with directions to exercise its discretion].) Here, the trial court did not recognize its discretionary authority and, as a result, committed legal error in concluding it was without the authority to appoint counsel. *203 E. Waiver of the Right to Access to the Courts
With some irony, defendants' supplemental brief contends: "By failing to raise an access-to-court argument below, Mr. Smith cannot complain about the issue now under the waiver doctrine." We reject this waiver argument.
First, California law defines waiver as the intentional relinquishment or abandonment of a known right or privilege. ( Smith v. Adventist Health System/West (2010) 182 Cal.App.4th 729, 745, 106 Cal.Rptr.3d 318.) Under this definition, waiver is based on intent. ( Ibid. ) The intent to waive may be expressed in words, either oral or written, or implied by a party's conduct. ( Ibid. ) Here, Smith has not expressly relinquished his right of access to the courts. As to an implied relinquishment, Smith's conduct includes pursuing the malpractice claim and, more specifically, filing a motion for appointment of counsel supported by arguments that he was unable to adequately represent himself because of his incarceration, lack of education and training, and probable difficulty in obtaining an expert witness. This conduct demonstrates an intent to use the judicial system to seek the redress for the allegedly substandard medical care, which is inconsistent with an intent to relinquish the right of access to the courts. Therefore, we conclude it is not objectively reasonable to infer Smith intended to give up that right.
Similarly, it is not objectively reasonable to infer Smith had the knowledge required to establish a waiver. Defendants' waiver argument has referred to no documents or other evidence in the record supporting a reasonable inference that Smith knew the nature and extent of his right of access to the court and how that right related to the appointment of counsel pursuant to the trial court's discretionary authority. Therefore, an intentional relinquishment or abandonment of a known right of access is not established by the record.
Second, and most importantly, when an indigent plaintiff in a civil action requests the appointment of counsel, that request should be interpreted as invoking the right of meaningful access to the courts, even if the indigent plaintiff does not explicitly mention that right. Courts generally are required to give pleadings a liberal, yet reasonable, construction ( Code Civ. Proc., § 452 ), and the same approach is warranted when an indigent, self-represented plaintiff requests the appointment of counsel. Based on current *476 State of California and federal constitutional law, it is objectively reasonable to interpret such requests as being based on the right to meaningful access to the courts. The alternate principle, which would conclude a trial court need consider its discretionary authority to appoint counsel if and only if a self-represented, indigent plaintiff explicitly mentions the right of meaningful access, would itself operate as a barrier to meaningful access. We further conclude that trial courts evaluating a request for the appointment of counsel by an indigent plaintiff must (1) recognize their discretionary authority to appoint counsel or implement other measures to afford the plaintiff meaningful access to the courts and (2) exercise that discretion in an informed manner. This obligation or responsibility imposes a small burden on trial courts as they should be aware of their role in the administration of justice, the constitutional principles that define that role, and the rights of persons resorting to the court system. If this responsibility was not inherent in the constitutional and statutory right of access to the courts, then indigent litigants most in need of protection because of their inability to effectively *204 represent themselves would be the least likely to obtain protection.
Consequently, the doctrine of waiver does not preclude this court from considering Smith's right of meaningful access to the courts as the basis for the appointment of counsel or appointment of an expert, even though he did not cite cases such as Apollo and Wantuch or explicitly mention the right in the trial court proceedings.
F. Appellate Relief for Failure to Exercise Discretion
Our conclusion that the trial court was not aware of its discretionary authority and, as a result, did not exercise that discretion leads to the following question: What appellate relief, if any, is appropriate? The possible answers include (1) declaring the error harmless; (2) remanding the case to the trial court to exercise its discretion; and (3) directing the trial court to appoint counsel because the circumstances so overwhelmingly favor the appointment of counsel that it would be an abuse of discretion to deny the request.
In Apollo and Wantuch , the appellate courts chose the middle ground, reversing the judgment and remanding to the trial court to exercise its discretionary authority. ( Apollo , supra , 167 Cal.App.4th at p. 1488, 85 Cal.Rptr.3d 127 ; Wantuch , supra , 32 Cal.App.4th at pp. 795-796, 39 Cal.Rptr.2d 47 ; cf. People v. McDaniels (2018) 22 Cal.App.5th 420, 426-428, 231 Cal.Rptr.3d 443 [ordering remand for resentencing where trial court is unaware of its sentencing discretion].) We conclude the same approach is appropriate in this case. There is a reasonable possibility that a result more favorable to Smith would have been reached in the absence of the failure to exercise discretionary authority. (See *477 Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 574, 34 Cal.Rptr.2d 607, 882 P.2d 298 [test for reversible error in civil case].) Therefore, the error was not harmless.
Conversely, the circumstances are not so overwhelming that the only proper exercise of discretion is the appointment of counsel. While Smith has made a prima facie showing on appeal that he is indigent and his claim is bona fide, the resolution of the first two steps of the three-step inquiry described in Apollo and Wantuch is better left to the trial court in the first instance. Similarly, the choice among the various measures available to protect the right of access to the courts is better left to the trial court, which is responsible for overseeing the litigation and better situated to evaluate how one or a combination of measures would operate "to ensure indigent prisoner litigants are afforded meaningful access to the courts." ( Apollo , supra , 167 Cal.App.4th at p. 1483, 85 Cal.Rptr.3d 127, citing Wantuch , supra , 32 Cal.App.4th at pp. 792-793, 39 Cal.Rptr.2d 47.) Its choice of measures may be affected by the answer to the factual questions about compensating experts noted earlier in footnote 9.
Consequently, we reverse the judgment and remand for further proceedings in which the trial court is directed to "first determine whether appellant is indigent" and next determine whether the lawsuit involved a bona fide threat to his personal or property interests. ( Apollo , supra , 167 Cal.App.4th at p. 1485, 85 Cal.Rptr.3d 127.) If those two conditions are present, the trial court must consider what remedies are available to protect Smith's right to meaningful access to the court, which remedies include the appointment of counsel and the appointment of an expert under Evidence Code section 730. (See Apollo , supra , at p. 1486, 85 Cal.Rptr.3d 127 ; In re Daniel C. H. (1990) 220 Cal.App.3d 814, 833, 269 Cal.Rptr. 624 ["trial court has discretion in the appointment and selection *205 of expert witnesses"]; In re Marriage of E.U. & J.E. (2012) 212 Cal.App.4th 1377, 1389, 152 Cal.Rptr.3d 58 [trial court's decision under Evid. Code, § 730 reviewed for an abuse of discretion].)[12]
In the unpublished part of this opinion, we conclude Smith's challenges to the grant of summary judgment have not demonstrated reversible error.
*478 Nevertheless, we will conditionally vacate the order granting the motion for summary judgment pending the outcome of the further proceedings relating to Smith's right of access to the courts. Those further proceedings might result in the adoption of measures that cause the trial court to reopen the motion for summary judgment, consider Smith's previous opposition papers (see fn. 3, ante ), and allow Smith or an attorney representing him to present additional materials or more refined arguments in opposition.
II. SUMMARY JUDGMENT**
DISPOSITION
The judgment is reversed. The matter is remanded to the trial court to vacate its order denying the motion for appointment of counsel and to conditionally vacate its order granting the motion for summary judgment. The motion for summary judgment shall remain pending while the trial court conducts further proceedings not inconsistent with this opinion, which shall include setting a schedule for supplemental briefing[16] from the parties on Smith's right of access to the courts and the relationship of that right to his request for appointment of counsel and the pending motion for summary judgment.
Appellant shall recover his costs on appeal.
WE CONCUR:
PEÑA, J.
DESANTOS, J.

Dr. Duenas, a named but unserved defendant, was dismissed from the lawsuit without prejudice in 2015. Thus, her opinion addresses the conduct of her subordinates.

Inmate grievances are processed in accordance with regulations set forth in article 8 of title 15 of the California Code of Regulations. The three levels of administrative review applied to the grievances are discussed by this court in Villery v. Department of Corrections & Rehabilitation (2016) 246 Cal.App.4th 407, 200 Cal.Rptr.3d 896 and Menefield v. Foreman (2014) 231 Cal.App.4th 211, 180 Cal.Rptr.3d 3.

The tentative ruling on the motion for summary judgment was issued on April 11, 2017, so the trial court did not have the benefit of Smith's response when it made its tentative decision, which was later adopted on April 27, 2017, following an unreported hearing held that day. The record does not show whether the trial court had actually seen Smith's response before or during the hearing.

Defendants' separate statement did not address whether Ogbuehi's notes accurately reflected her conversations with Smith.

Smith's response to defendants' separate statement was filed on April 27, 2017, well after Dr. Duenas executed her declaration on December 13, 2016. Dr. Duenas did not anticipate Smith's claim that the straight-leg test was performed incorrectly and, therefore, did not address (1) how to perform a straight-leg test in accordance with the applicable standard of care or (2) the manner in which Ogbuehi performed the test.

The United States Supreme Court has "grounded the right of access to court in the Article IV Privileges and Immunities Clause [citations], the First Amendment Petition Clause [citations], the Fifth Amendment Due Process Clause [citations], and the Fourteenth Amendment Equal Protection [citation] and Due Process Clauses [citations]." (Christopher v. Harbury (2002) 536 U.S. 403, 415, fn. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 ; cf. Cal. Const., art. I, § 3, subd. (a) ["people have the right to ... petition government for redress of grievances"].)

We have located, and the parties have cited, no published decision explicitly including or excluding the discretionary appointment of an expert pursuant to Evidence Code section 730 from the measures available to protect the right of access to the courts. Here, we explicitly decide this apparently novel question and conclude the discretionary appointment of an expert pursuant to Evidence Code section 730 is among the measures a trial court may consider.

The same is true of the United States Constitution and the federal statute, even when the lawsuit alleges violations of constitutionally protected rights. (Jackson v. Dallas Police Dept. (5th Cir. 1986) 811 F.2d 260, 261 (Jackson ).)

In Yarbrough , the Supreme Court stressed the distinction between the discretion to appoint counsel and the lack of authority to order the payment of public funds to compensate such appointed counsel for indigent prisoners in civil actions. (See Apollo, supra , 167 Cal.App.4th at p. 1484, fn. 12, 85 Cal.Rptr.3d 127.)

Defendants' supplemental brief asserts: "Neither Mr. Smith's pro-per nor incarcerated status barred him from sourcing his own expert. Identically situated individuals have surpassed both hurdles." Defendants support this assertion by citing Jameson, supra , 215 Cal.App.4th at page 1149, 155 Cal.Rptr.3d 755 (inmate presented expert testimony that doctor's breach of the standard of care caused inmate to receive numerous unnecessary injections of interferon, which a jury could find was painful and inherently injurious). The fact a reported decision shows a self-represented inmate was able to obtain a medical expert in a particular malpractice action may establish context for the issue, but it is not evidence tending to prove Smith is capable of obtaining his own expert and, thus, is not directly relevant to whether Smith's right to access is being impeded.

Where, as here, an inmate's motion satisfies the requirements of nonfrivolousness applicable to civil filings generally (Code Civ. Proc., § 128.7 ), this distinction relating to the inmate's subjective motivation for seeking counsel is irrelevant to whether the inmate's access to court is being impeded or to the appropriate measures to remedy any impediment.

We do not reach the following legal question, which has not been briefed by the parties: Are California trial courts required to place on the record explicit oral or written findings explaining the exercise of their discretionary authority? We note, however, that in some contexts involving discretionary determinations, such findings are required "to make meaningful appellate review possible." (Ramos v. Countrywide Home Loans, Inc. (2000) 82 Cal.App.4th 615, 629, 98 Cal.Rptr.2d 388 [explicit findings required when trial court departs from lodestar attorney fee approach and applies a multiplier]; cf. Jackson , supra , 811 F.2d at p. 262 [federal trial courts should make specific findings on each of the relevant factors when deciding a motion for appointment of counsel in a civil rights case]; Robbins v. Maggio (5th Cir. 1985) 750 F.2d 405, 413 [district courts' cursory findings insufficient; cases remanded for more specific findings as to why counsel was denied in each of the cases].)

See footnote *, ante .

In his supplemental brief, Smith is not precluded from requesting the appointment of an expert under Evidence Code section 730 because that is one of the measures available to a trial court to protect an indigent prisoner's right to meaningful access to the courts. Moreover, a trial court has the discretion to consider such a measure, whether or not requested by the inmate. In other words, an inmate may not restrict the measures available to the trial court by omitting some measures from his or her request.