Filed 11/25/25  Reiser v. Reiser CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RORY REISER et al.,<br><br>        Plaintiffs and Respondents,<br>v.<br>HANS REISER,<br><br>        Defendant and Appellant. | A136653<br><br>(Alameda County<br> Super. Ct. No. RG08406864) |

Appellant Hans Reiser was convicted of first degree murder for the 2006 killing of his wife and the mother of his children, Nina Reiser.  He was the last to see her alive and was charged with her murder though law enforcement had not recovered her body or a murder weapon.  Before sentencing Reiser pled guilty to a reduced charge of second degree murder as part of a plea agreement pursuant to which he disclosed the location of her body.  He is currently serving a 15-year-to-life sentence.

His two children, Rory and Nioline, who were six years old and five years old respectively when their mother disappeared, through a guardian ad litem filed this wrongful death suit against him and secured a $60 million jury verdict, including $10 million in punitive damages.  Reiser, who is self-

1

represented, now appeals the civil judgment entered against him. No respondent's brief has been filed.

We affirm the judgment.

## DISCUSSION

### I.

On appeal, Reiser does not deny that he killed his wife and was convicted of her murder or that his children were very young when he committed the murder. Nonetheless, he raises many issues as to why the children's civil trial against him for damages was unfair.

He contends he was denied a fair trial in violation of his constitutional due process rights based on trial court error in failing to appoint him counsel below; failing to appoint him a defense investigator; and denying him the right to subpoena or call witnesses, resulting in what he says was a one-sided trial. He also complains that he was denied an "audio record" of the trial proceedings. He also raises issues concerning the jury, contending the court wrongfully excluded a potential juror who had worked with abused children, and that some of the jurors who served were exposed to news accounts and information not in evidence.

He challenges the award of punitive damages on several grounds. He argues that the punitive damages award was unsupported by sufficient evidence of his ability to pay (see generally *Adams v. Murakami* (1991) 54 Cal.3d 105); the jury instructions on punitive damages were inadequate; and his closing argument on punitive damages was improperly curtailed.

Reiser raises many other issues touching on a variety of subjects. He contends his request for DNA testing to prove his deceased wife had suffered from Munchhausen by Proxy was improperly denied; the trial court "misapplied the doctrine of collateral estoppel" to bar a defense that would

2

have been insufficient against murder and was not litigated in the underlying murder case, apparently alluding to an effort to prove his murdered wife was a compulsive child abuser; the court improperly restricted press access to hearings; it is unethical to sue an indigent defendant; the California Department of Corrections and Rehabilitation (C.D.C.R.) should be ordered to pay the judgment against him; the trial court improperly denied a motion to join the C.D.C.R. as a party; and maintenance of this suit is "contrary to the law and legislative intent" because the record lacks evidence his children ever consented to it being filed on their behalf.

There are many difficulties with these arguments that are apparent on the face of Reiser's briefing. The trial was not reported, and so we have only a limited record of what took place. Most of his arguments are undeveloped and unsupported by a discussion of applicable legal authority.[1] And wholly absent from his claims of error is a discussion and analysis of the

---

[1] One such issue is his reference in a single sentence to "[t]he lack of a transcript" at trial as "compound[ing]" the error he claims the trial court made in excluding press from one hearing. We conducted an independent review of portions of the clerk's transcript in an effort to provide accurate context about the trial of this case, we reviewed a new trial motion he filed in the trial court, in which, among other things, he claimed he "was not allowed a Court Reporter or transcripts." However, he made no such direct argument in his appellate brief; nor provided the court with any detail about whether or when he requested a court reporter or the trial court denied such a request. Our own review of portions of the clerk's transcript reflects that early in the case, Reiser requested and the court granted a waiver of court fees and costs, including court reporter fees and that minutes of the trial days state, "No court reporter is present." But Reiser has not argued on appeal and we cannot say whether he ever requested that the court provide a court reporter or audio recording for any hearing or for the trial. In short, Reiser has not properly raised this issue in his appellate brief and thus has forfeited it.

constitutional requirement of prejudice.[2]  (See generally Cal. Const., art. VI, § 13; see also Evid. Code, §§ 353, 354; Code Civ. Proc., § 475.)

Ordinarily, we would summarily affirm the judgment on the basis of these deficiencies.  "Among the most basic principles of appellate review are that a trial court's decision is presumed correct." (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 380-381 (*Osborne*).)  This means that it is the appellant's burden to "affirmatively show error by an adequate record" and "[w]e cannot presume error from an incomplete record." (*Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 976-977; see, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [failure to show error without reporter's transcript of trial]; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 71-72 [failure to show error without record of closing argument to jury].)  Here, the absence of a record of the trial precludes meaningful review of most, if not all, of Reiser's claims.

But the absence of an adequate record is not the only problem.  Another facet of our presumption the court did not err is that "the appellant bears the burden of presenting argument and legal authority to demonstrate error thereby overcoming the presumption." (*Osborne*, *supra*, 106 Cal.App.5th at p. 381.)  To do this, " 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 164.)  It is not our job to research and analyze the law on our own, nor scour the clerk's transcript to see if it supports any of Reiser's

---

[2]  Even when there is error (in the jury instructions, in the court's evidentiary rulings, or in "any matter of procedure"), we are constitutionally prohibited from disturbing a judgment unless the error has "has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13.)

4

claims of error. "The reviewing court is not required to develop the parties' arguments" for them. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.) "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) When an appellant fails to "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," the appellant has not demonstrated error. (See *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.) These rules apply equally to pro per litigants. (See, e.g., *Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 [on appeal, " 'self-represented parties are " 'held to the same restrictive procedural rules as an attorney' " ' "].) Reiser's briefing fails in these respects too.

As said, ordinarily we would summarily affirm the judgment in these circumstances and stop there. Here, however, Reiser has asked this court to appoint him a lawyer on appeal. He asserts that he is constitutionally entitled to this because he is indigent and incarcerated and has been unable to effectively represent his own interests in the appellate court due to the constraints of imprisonment. (See generally *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197 (*Yarbrough*); *Payne v. Superior Court* (1976) 17 Cal.3d 908 (*Payne*).) We solicited supplemental briefing from the parties concerning this subject and now set out our reasons for denying his request.

## II.

An incarcerated indigent civil defendant who is threatened with the deprivation of his property rights has a federal and state constitutional right of access to the courts. (*Yarbrough, supra,* 39 Cal.3d at p. 200.) This is both

a due process right and one based on equal protection of the law under both the federal and state constitutions. (See *Payne, supra,* 17 Cal.3d at pp. 914 & fn. 3, 919, 927.) Appointment of counsel may be the only way to protect such a defendant's right of access to the courts but only as a "last alternative." (*Yarbrough*, at p. 200.) Ultimately, how to protect such a prisoner's right of access to the courts is a matter left to the court's discretion. (See *Payne,* at p. 927.)

Although no case has considered an indigent prisoner's access to the appellate courts in a civil case, Reiser has demonstrated, as a factual matter, that his ability to pursue this appeal has been abridged by reason of his incarceration. His filings in this court have repeatedly referenced difficulties he has had (i) obtaining and accessing the existing appellate record (he has been unable to procure the record, or even check court websites for information about the case); (ii) communicating with opposing counsel in an effort to prepare an agreed statement of proceedings; (iii) conducting legal research, due to crowded conditions in his prison law library and limited access to it; (iv) and accessing his own legal files from the trial of the case, due to restrictions on his possession of property. Regardless of whether any one of these circumstances alone has significantly impeded his ability to prosecute an effective appeal, all of them combined appear to have done so. (See *Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 470 [courts "must examine the totality of the circumstances when making the discretionary determination of whether an inmate's access is being impeded"].)

But to assess, legally, whether these abridgements are of *constitutional* significance depends on whether Reiser, who is indigent, "is threatened with a judicially sanctioned deprivation of his property." (*Payne*, *supra*, 17 Cal.3d at p. 927.) Only if he is does he have a constitutional right of access to the

courts grounded in due process of law and equal protection. (See *id.* at p. 914 [explaining that both analyses are similar]; *id.* at p. 916 ["a defendant in a civil case seeks . . . the protection of property he already owns or may own in the future," which is a fundamental right]; *id.* at p. 919 ["to be heard in court to defend one's property is a right of fundamental constitutional dimension; in order to justify granting the right to one group while denying it to another, the state must show a compelling state interest"].) That is, the adverse judgment with which he is threatened must be one that will affect his property rights. (*Yarbrough, supra,* 39 Cal.3d at p. 204; see also *Payne,* at p. 924 [court must "ascertain whether the prisoner's interests are actually at stake in the suit"].)

To decide if it does, courts must independently "assess[] . . . whether or how [the prisoner's] future economic fortunes would be affected by a judgment against him," and the potential deprivation of property must not be "wholly ephemeral." (*Yarbrough, supra,* 39 Cal.3d. at p. 205.) "If the indigent presently has no property—and by definition he is not likely to have much—some assessment must be made as to the indigent's assertion that his interests are 'actually at stake.' " (*Id.* at p. 204.) The standard does not "encompass an incarcerated indigent no matter how remote his expectation of 'future property interests,' . . . for every incarcerated defendant, viewing his world through rose-colored glasses, can anticipate release or commutation in time to return to the job market." (*Id.* at pp. 204-205.) Therefore, "[t]he court itself should evaluate the potential for loss to the prisoner, weighing such factors as age, term of incarceration, employment history, education, skills, family background and the likelihood of inheriting or otherwise obtaining property. The court may also consider the prisoner's prospects for earning money while in prison and accumulating sums to satisfy a civil judgment—

7

royalties from books and songs come to mind.  Undoubtedly there are other sources that might prove fruitful." (*Id.* at p. 205.)

We solicited briefing from the parties concerning this issue.  Having reviewed the parties' supplemental letter briefs, we conclude that, notwithstanding a $60 million judgment entered against him, Reiser has no current or future property interest actually at stake in this appeal.

In the declaration he filed in support of his supplemental brief, Reiser states that he is 61 years old and serving a sentence of 15 years to life. Before going to prison, he had decades of experience in the technology industry including, at one point, developing file system software that generated a fee as large as $500,000.  He states that he incurred $89,000 in credit card debt in connection with a technology company he founded, indebtedness that, today, he estimates has "probably [grown to] over $10 million."

He states that his likelihood of inheriting or otherwise obtaining property is "poor," because his father is no longer alive, his mother wants no contact with him and he knows of no other potential source of inheritance. He states he has "no nonspeculative prospects for earning money while in prison from any source" and only a "speculative hope of making money if[] I parole."  He states that he has osteoarthritis that requires him to use a wheelchair for "non-trivial distances," causes pain when he walks, and sometimes causes back spasms that can require five minutes just to put on shoes or even 20 minutes just to get out of bed.  He states that "[i]t is possible that I will parole, and after paroling make money" but expresses pessimism regarding his chances of parole for a variety of reasons[3] and offers no concrete

---

[3]  At oral argument, he informed us that in October 2024 his most recent effort to obtain parole was denied for three years.

details about earning income if he is paroled other than reciting his technical and educational background and explaining the "elevator pitch" he would use to seek venture capital for a new company or a job. He identifies no specific job prospects, leads or networking contacts who might be willing to assist him finding gainful employment in the technology industry if paroled. He is unaware of any efforts to collect the judgment against him, and respondents state there have been none because Reiser has argued throughout the case his assets were depleted by his criminal defense costs, and respondents are unaware of any assets or any friends or family members who have identified Reiser as the recipient of any assets.

On the basis of this showing, we conclude that Reiser's threatened deprivation of property is remote, speculative and wholly ephemeral. In terms of his prospects of earning future income, he has demonstrated no nonspeculative basis to think he is likely to get paroled in the near future or at all. And even if he were to be paroled, his ability to earn a significant income is speculative, at best. He left the technology sector nearly 20 years ago (when he was arrested) and he is now age 61. Despite an impressive educational background and professional experience, his long absence from the technology sector, combined with his age, physical disability and criminal background, are likely to pose significant challenges to securing meaningful employment or investment opportunities that would provide significant income. In short, his prospects of earning future income are remote, at best.

For these reasons, Reiser lacks a stake in the appeal and for that reason is not entitled to the appointment of an attorney to represent him in the appellate court or any other relief.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs.

9

STEWART, P. J.


We concur.


MILLER, J.


DESAUTELS, J.


*Reiser v. Reiser* (A136653)