Filed 10/22/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD J. CRANE, | F079877 |
| Plaintiff and Appellant, | (Super. Ct. No. 14C0180) |
| v. | |
| JOSEPH CLAY DOLIHITE, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County. Kathy Ciuffini, Judge.

Richard J. Crane, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

-ooOoo-

Plaintiff Richard J. Crane, a self-represented prison inmate, appeals from the dismissal of his personal injury action against an inmate who stabbed him in the neck with a pencil. The dismissal was based on Crane's failure to serve the summons and complaint on the defendant inmate within the time prescribed by statute. (See Code Civ. Proc., §§ 583.210, subd. (a) [plaintiff must serve a defendant within three years], 583.250.)[1]

---

[1]    Subsequent unlabeled statutory references are to the Code of Civil Procedure.

Crane encountered difficulties in serving the summons and complaint on the defendant inmate because (1) the defendant was transferred to Salinas Valley State Prison in Monterey County; (2) for a time, Crane was unable to identify the defendant's location; (3) the superior court advised Crane to use the sheriff's office to effect service and, subsequently, the Monterey County Sheriff's Office refused to serve the summons and complaint; and (4) the litigation coordinator at Salinas Valley State Prison refused to accept service on behalf of the defendant inmate. The litigation coordinator's refusal contradicts Penal Code section 4013, subdivision (a) and Code of Civil Procedure section 416.90, which have been interpreted as authorizing litigation coordinators at state prisons to accept service on behalf of inmates. (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858–859 (*Sakaguchi*).)

On appeal, Crane contends the acts and omissions of prison officials and others denied his right to meaningful access to the courts. We agree. The record on appeal demonstrates Crane's statutory right to initiate and prosecute a civil action (Pen. Code, § 2601, subd. (d)) has been infringed. Specifically, the record shows that official acts frustrated Crane's attempts to serve his civil action on the defendant inmate and that the dismissal of the nonfrivolous action caused a miscarriage of justice. Based on this showing, we conclude Crane's statutory right of access to the courts was denied and do not reach the constitutional aspects of Crane's claim of error.

We therefore reverse the judgment and remand for further proceedings.

## FACTS

On January 16, 2013, Crane was studying at a computer in a general educational development (GED) class at the High Desert State Prison in Lassen County. Crane was attempting to obtain a GED certificate for a parole board hearing. Defendant Joseph Clay Dolihite approached Crane from behind and stabbed him in the neck with a pencil. The pencil broke off in Crane's neck on the second thrust. Dolihite then began punching

2.

Crane in the head and back. The instructor sounded an alarm and correctional officers responded.

When interviewed by correctional officers, Dolihite stated he and Crane had been arguing over the use of a computer and he waited for Crane to get busy, grabbed a pencil out of his pocket, and tried to put it through Crane's neck. Dolihite also told the officers that Crane likes to run his mouth and Dolihite wanted to see how good a pencil would look going through his throat, so he gave it a try. When asked if he was trying to kill Crane, Dolihite stated that he did not expect the pencil to break.

Crane was taken to the prison's emergency clinic, examined by medical staff, and treated for the stab wounds, one of which was close to his jugular vein. Crane was placed in administrative segregation and, after about a month, was released to Facility B at the prison.

Crane alleges he was assaulted by two other prisoners and prison guards on March 1, 2013, which caused serious bodily injury. He sued the correctional officers in federal court, alleging a violation of his civil rights under section 1983 of title 42 of the United States Code. Crane contends the assaults are part of a conspiracy between prison guards and inmates to retaliate against him for suing the warden and two captains for denying outdoor exercise and staging assaults on inmates. (See *Crane v. McDonald* (E.D.Cal. May 8, 2012, No. CIV S-11-0663 KJM CKO P) 2012 U.S.Dist. Lexis 64622 [order concluding an Eighth Amendment denial of outdoor exercise claim was properly alleged].)[2]

---

[2] Pursuant to Evidence Code sections 452, subdivision (c) and 459, we take judicial notice of the existence of the December 2015 report issued by the Office of the Inspector General entitled "2015 Special Review: High Desert State Prison, Susanville, California," but not the facts stated in the report. (See *Licudine v. Cedars-Sinai Medical Center* (2016) 3 Cal.App.5th 881, 902 [court could take judicial notice of fact that Bureau of Labor Statistics published report but not truth of facts stated in report].) The report addressed practices at the prison with respect to excessive use of force against inmates,

In June 2013, the Lassen County District Attorney filed a criminal complaint against Dolihite charging him with attempted murder and alleging he had been convicted of serious or violent felonies in 1983, 1994 and 2000.  In October 2013, Dolihite plead guilty to assault with a deadly weapon by a state prisoner in violation of Penal Code section 4501.  He was sentenced to a total of eight years—four years for the assault and four years for the enhancement for prior convictions.

## PROCEEDINGS

In June 2014, Crane filed a personal injury complaint against Dolihite in Kings County Superior Court.  In December 2014, the superior court filed an order stating it had received a form for proof of service of the complaint and summons that had not been completed to indicate when and how the defendant was served.  The order also stated: "The court does not serve civil complaints for litigants.  Plaintiff will have to make arrangements with the Sheriff Department at the county where defendant is located for service of plaintiff's complaint and summons."

In January 2015, Crane prepared and signed a first amended complaint.  It was filed by the superior court on February 23, 2015, along with Crane's motion for service of the first amended complaint and summons pursuant to sections 413.30, 414.10 and 415.30.  Crane asserted he was prevented from effecting service because of the concealment of Dolihite's address.  Crane stated Dolihite's address was not listed in the information available through the online inmate locator maintained by the California Department of Corrections and Rehabilitation (CDCR).

On March 2, 2015, the superior court filed an order rejecting Crane's assertion that Dolihite's address was being concealed.  The court had used CDCR's online inmate locator and found Dolihite's location was available.  The order also stated:

internal review of incidents involving the use of force against inmates, protecting inmates from assault and harm by others, and treatment of disabled inmates.

4.

"This court has already informed plaintiff that the court does not serve civil complaints for litigants. They are served by the Sheriff Department at the county where defendant is located and plaintiff must make his own arrangements for service.

"The plaintiff should consider that if service is achieved, defendant appears and there is a need to serve additional pleadings on defendant, the plaintiff will be required to comply with the requirements of California Code of Regulations, tit. l5 section 3139. This regulation requires written authorization from the warden before inmates may correspond with one another. Institutional safety and security supports a regulation that requires prior permission of the warden before an inmate may correspond with another inmate. (*Turner v. Safley* (1987) 482 U.S. 78.) Should the warden deny either inmate the right to correspond, this court would have no alternative but to stay this litigation until the parties have been released from their confinement (*Payne v Superior Court* (1976) 17 Cal.3d 908, 924, 927; *Wantuch v Davis* (1995) 32 Cal.App.4th 786, 792.)"

On May 4, 2015, Crane filed a motion for a 30-day extension of time to effect service of the summons and complaint. Crane asserted he had been in touch with an attorney who might take his case and, with the assistance of counsel, he should be able to affect service of process without any further problems. Crane attached an April 9, 2015, letter from the attorney, which stated he was trying to schedule a meeting with Crane for the end of April. The attorney also raised concerns about proving up damages if Dolihite defaulted and collecting the damages.

On May 8, 2015, Crane filed a motion to dismiss without prejudice or, alternatively, to stay proceedings pending his release from prison. The motion referred to an order to show cause regarding his failure to appear at a case management conference and the possible dismissal of the case. Crane stated he had not received notice of any scheduled conference. Crane asserted he had become aware that he would be unable to pursue the case without counsel because he was incarcerated and could not serve Dolihite or prosecute the case properly. Crane requested that the court not order his appearance in court because that would disrupt his job and placement, which were necessary for him to become eligible for release. The superior court granted Crane's request to stay the

5.

lawsuit, setting a case management conference for May 17, 2016, and vacating a June 2015 hearing on the order to show cause. Effectively, the case was stayed for one year.

A year later, the May 2016 case management conference was held. The results of that conference are not shown in the clerk's transcript or the register of actions. Five days before the conference, Crane had filed a motion to extend the stay of proceedings for another year based on his belief that he was going to be released from prison and then would be able to effectively prosecute his case. He also notified the court his address had changed to the California State Prison, Los Angeles County, in Lancaster. It appears Crane's motion was granted because the next case management conference was scheduled for a year later, in May 2017.

Crane failed to appear at the May 2017 conference, and the superior court issued an order to show cause. In response, Crane filed a motion stating that, six days in advance, he was advised the CourtCall hearing was scheduled, he was in lockdown conditions at the time, he relied on prison officials to call him, and the CourtCall never took place. Crane asked for relief from any default and requested a 90-day extension to file a motion for a continuance of the stay.

The ruling on Crane's motion is not contained in the clerk's transcript. However, six months later, in November 2017, Crane filed another motion to extend the stay of proceedings for 90 more days pending resolution of a pending federal case, *Richard J. Crane v. Rodriguez, et al.* (E.D.Cal. No. 2:15-CV-00208-TLN-KJN). The superior court granted Crane 90 days to obtain approval from the warden to communicate by mail with Dolihite for the purpose of serving the summons and complaint.

In February 2018, Crane filed a motion for a further extension of time that described the difficulties he was having in communicating with the warden about his request to correspond with Dolihite. The motion stated that on January 22, 2018, Crane had submitted a CDCR form 22, request for interview. A copy of the form was attached to the motion. In the form's topic box, Crane typed "WARDEN'S PERMISSION TO

SUE." In section A of the CDCR form 22, Crane stated that, pursuant to a court order, he needed to obtain permission from the warden to serve inmate Dolihite with the complaint. Crane requested permission as soon as possible, stating he had to file a case management statement by February 14, 2018.

Section B of the CDCR form 22, staff response, was completed by Sergeant Torres on January 30, 2018, and stated the request would be forwarded to the litigation coordinator. On February 5, 2018, Crane completed section C, request for supervisor review. Crane referred to his court deadline of February 14, 2018, and asserted the absence of a response was denying him access to the court in this lawsuit.

Besides submitting a CDCR form 22, Crane mailed the warden a letter stating the superior court had ordered him "to obtain the Warden's permission to sue Joseph Clay Dolihite by mail because he is an inmate in CDCR." Crane included a self-addressed, stamped envelope for the warden's response.

Crane's February 2018 motion for a further extension of time stated he had not received a response to his letter to the warden and also asserted his legal mail was being obstructed or lost. His motion asked the superior court for more time to obtain the warden's approval.

Later that February, the superior court filed an order extending the time for Crane to receive permission from the warden to correspond with Dolihite so that Dolihite could be served. The order noted the June 2014 filing date of the complaint and the one-year stay issued in May 2015. It then stated, "this case is fast approaching the three year bar on service of a summons set forth in Code of Civil Procedure sections 583.210 and 583.250" and gave Crane "until March 3, 2018, to file the response from the warden to [his] request to correspond with defendant for the purposes of pursuing this lawsuit." The order also stated the issue would be addressed further at a case management conference scheduled for March 8, 2018. Crane's case management statement was filed a day before the conference and indicated permission from the warden was still pending.

7.

Over the course of the next year, several case management conferences and hearings on orders to show cause were scheduled. Often, Crane did not appear and subsequently asserted he had been denied access to CourtCall. During that year, Crane kept the superior court apprised of the fact he had not received any reply to his CDCR form 22 or his letter to the warden. Crane also repeated his earlier request that the court order service of the complaint on Dolihite.

In March 2019, the superior court filed another order to show cause relating to Crane's failure to appear at a case management conference and failure to serve the complaint. Before the April 2019 hearing on the order to show cause, Crane filed an application for extension of time to serve pleading and an order continuing the case management conference using optional Judicial Council form CM-020. The application stated Crane had "received endorsed summons to serve with the complaint and waiver of service forms notice of return receipt with a Self-Addressed postage paid envelope to the Monterey County Sheriff requesting service by the Sheriff process server on February 14, 2019. No response was received." At the end of the form CM-020, the court signed an order stating (1) the case management conference would remain scheduled on April 26, 2019, and (2) CourtCall was approved for Crane on that date. Subsequently, the court rescheduled the conference for June 26, 2019.

On April 29, 2019, Crane filed another application on Judicial Council form CM-020 for extension of time to serve pleading that explained what had happened with his attempt to complete service through the sheriff's office. Crane stated he had mailed the first amended complaint to the Monterey County Sheriff's Office requesting service on Dolihite and he received back from the Civil Division of the Monterey County Sheriff's Office a "Notice of Action Taken." The notice stated the sheriff's office was unable to process Crane's request and gave its reason by stating: "Please contact Soledad State Prison to serve inmates at their facilities." The notice listed the return date as March 4, 2019.

8.

Crane's application described his response to the notice from the sheriff's office. Crane stated he promptly mailed all documents to the Salinas Valley State Prison, which is near Soledad. The reaction of prison officials is set forth in an April 23, 2019 letter from G. Lopez, a litigation coordinator at Salinas Valley State Prison. The letter informed Crane that his legal correspondence was being returned "for the following reasons: [¶] *Improper Service and the Litigation office does not serve or accept service for other inmates."

Crane's April 2019 application for an extension of time to serve the pleading was denied by the superior court. The court's order stated the summons and complaint must be served by June 14, 2019, and confirmed the June 26, 2019, hearing date for the case management conference. The order also stated: "There is no evidence in the record that prison officials are thwarting Plaintiffs efforts to serve defendant. There is no good cause shown to issue the order. Plaintiff has had numerous opportunities to serve Defendant over the past four years." The order made no reference to a sheriff's statutory duty to serve process in a civil action and no reference to a litigation coordinator's duty to accept service on behalf of inmates. Those duties are discussed in part I.B. of this opinion.

On June 26, 2019, the superior court held a hearing and Crane appeared through CourtCall. The minute order from the hearing stated Crane had not accomplished proof of service on the defendant. The court dismissed the case with prejudice. Crane filed this appeal.

## DISCUSSION

### I.   APPLICABLE LEGAL PRINCIPLES

#### A.   Right of Access to the Courts

Crane's theory of superior court error is based on a denial of his right of access to the courts—a right with both statutory and constitutional dimensions. The federal and state Constitutions guarantee the right of access to the courts to all persons, including

9.

prisoners. (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 465 (*Smith*).) In addition, a California statute grants state prisoners the right "[t]o initiate civil actions" as plaintiffs. (Pen. Code, § 2601, subd. (d).) This statute has been interpreted to afford state prisoners a right of meaningful access to the courts to both initiate and prosecute civil actions. (*Smith*, *supra*, at p. 465.) Under Penal Code section 2601, subdivision (d), " 'a prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests.' " (*Smith*, *supra*, at p. 465.)

The reference to a bona fide civil action *threatening* the prisoner's interest is derived from a Supreme Court decision in which the prisoner was a defendant in a civil action. (See *Payne v. Superior Court, supra,* 17 Cal.3d at pp. 912, 927 [writ of mandate directed trial court to vacate order denying defendant prisoner's motion for relief from default judgment of $24,722].) In *Payne*, the court stated the right of access to the courts "comes into existence only when a prisoner is confronted with a bona fide legal action threatening his interests." (*Id*. at p. 924.) This statement was tailored to a prisoner who was a defendant. When a prisoner is a plaintiff in a civil action, we interpret the clause " 'a party to a bona fide civil action threatening his or her personal or property interests' " (*Smith*, *supra*, 38 Cal.App.5th at p. 465) to mean a bona fide civil action seeking relief for a nontrivial injury to the prisoner's personal or property interests.

In *Smith*, we followed earlier decisions and adopted a three-step inquiry for trial courts to use in determining whether to take measures to protect an indigent prisoner's right of meaningful access to the courts. (*Smith*, *supra*, 38 Cal.App.5th at pp. 466–467.) First, the court determines whether the prisoner is indigent. (*Id*. at p. 466.) Second, the court determines whether the lawsuit involves a bona fide threat (or seeks relief for a bona fide injury) to the prisoner's personal or property interests. (*Ibid*.) Third, if the first two conditions are met, the court considers what measures are available to protect the prisoner's right of meaningful access to the courts. (*Id*. at pp. 466–467.)

10.

A nonexclusive list of measures to ensure indigent prisoners are afforded meaningful access to the courts include "(1) deferral of the action until the prisoner is released; (2) appointment of counsel for the prisoner; (3) transfer of the prisoner to court to attend hearings or the trial; (4) utilization of depositions in lieu of personal appearances; (5) holding of trial in prison; (6) conducting status and settlement conferences, hearings on motions and other pretrial proceedings by telephone; (7) propounding of written discovery; and (8) use of closed circuit television or other modern electronic media." (*Smith, supra*, 38 Cal.App.5th at p. 467, italics omitted.) In addition, trial courts may implement other innovative, imaginative procedures. (*Ibid*.)[3] When deciding the appropriate measure or measures to assure access, the relevant circumstances include the practicality and effectiveness of the various measures available to protect the prisoner's right of access to the courts. (*Smith, supra,* at p. 467.)

B.      Service of Process

Service of process on a defendant is an important step in obtaining access to the remedies available through the court system. The "formal service of process performs two important functions." (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 139.) First, from the court's perspective, service of process asserts jurisdiction over the person. (*Ibid*.) Obtaining personal jurisdiction is important because a trial court can enter a valid judgment only if it has both jurisdiction of the person and jurisdiction of the subject matter. (*Id.* at p. 138.) Second, from a defendant's perspective, service of process provides notice of the pending action and gives the defendant an opportunity to present a defense. (*Id.* at p. 139.) Thus,

---

[3]      Based on this list of specific measures and the broad description of other procedures, we conclude the superior court's March 2015 order misstated the options available when it stated: "Should the warden deny either inmate the right to correspond, this court would have no alternative but to stay this litigation until the parties have been released from their confinement (*Payne v. Superior Court*[, *supra,*] 17 Cal.3d 908, 924, 927; *Wantuch v. Davis*[, *supra,*] 32 Cal.App.4th 786, 792.)"

11.

service of process protects a defendant's due process right to defend against an action by providing constitutionally adequate notice of the court proceeding. (*Ibid*.)

" 'Process' signifies a writ or summons issued in the course of a judicial proceeding." (§ 17, subd. (b)(7).) Service of a summons is governed by a five-article chapter in California's Code of Civil Procedure. (§§ 413.10–417.40.) "[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 [judgment against a defendant who was not served with a summons in the manner prescribed by statute is void].)

### 1. Who May Serve a Summons

"[A]ny person who is at least 18 years of age, and not a party to the action" may serve a summons. (§ 414.10.) A summons may be served by a private individual meeting these requirements, by a professional process servicer, or by certain peace officers. (See Bus. & Prof. Code, § 22350 [registration of professional process servers], Gov. Code, § 26665 [marshals and sheriffs authorized to serve process in civil actions].)

Government Code section 26608 states that "[t]he sheriff *shall* serve *all* process and notices in the manner prescribed by law." (Italics added; see 42A Cal.Jur.3d (2016) Law Enforcement, § 167, p. 269.) The predecessor of this provision, which also referred to "all process," was interpreted to require a sheriff "to serve all process and notices directed to him, or placed in his hands for service, which the law commands him to serve when addressed or handed to him." (*Golden Gate Hydraulic Mining Co. v. Superior Court* (1884) 65 Cal. 187, 190; see *Ayres v. Burr* (1901) 132 Cal. 125, 129 ["sheriff is required to serve all writs and other process coming to him which are regular on their face"].) The fee payable to a sheriff for serving process in a civil action is set by statute at $40. (Gov. Code, §§ 26720.9, 26721.)

12.

## 2. *Who May be Served*

Generally, "[i]ndividual defendants are served by delivering copies of the summons and complaint to them personally or to someone else authorized by law to accept service on their behalf." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (2021) ¶ 4:122, p. 4-17.) The option of serving someone other than the individual defendant is addressed in section 416.90, which states: "A summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process." "The Judicial Council comment regarding this section explains, 'Service is made by delivering, in a manner specified in Section 413.10, a copy of the summons and of the complaint to such person personally *or to his agent*. [¶] If process is delivered to an agent of defendant, such *agent* must be *one who is authorized by law* or by appointment to receive service of process.' " (*Sakaguchi*, *supra*, 173 Cal.App.4th at p. 858, italics added.)

Based on section 416.90 and the related comment, we consider whether California law authorizes anyone to accept service on behalf of a prisoner. Penal Code section 4013, subdivision (a) states that a "jailer upon whom a paper in a judicial proceeding, directed to a prisoner in his or her custody, is served, shall forthwith deliver it to the prisoner, with a note thereon of the time of its service. For a neglect to do so, he or she is liable to the prisoner for all damages occasioned thereby." This provision does not explicitly state a jailer or official at a state prison is authorized to accept service on behalf of a prisoner. Nonetheless, the mandatory duty to "forthwith deliver" the papers to the prisoner strongly implies that jailers are required to accept service in the first place. Accepting this implication, the court in *Sakaguchi*, *supra*, 173 Cal.App.4th 852, interpreted Penal Code section 4013, subdivision (a) to mean a "jailer is authorized by law to receive service of process on behalf of a prisoner in his or her custody." (*Sakaguchi*, *supra*, at p. 858.)

13.

In *Sakaguchi*, the plaintiff "served process on the litigation unit coordinator at Avenal State Prison in accordance with the procedures for service by mail set out in section 415.30." (*Sakaguchi*, *supra*, 173 Cal.App.4th at p. 859.) The litigation coordinator signed and dated (1) the notice and acknowledgement of receipt included with the summons and complaint and (2) a proof of service of summons form, which declared she had personally delivered the summons and complaint to the defendant prisoner. (*Ibid*.) The court concluded the plaintiff "complied with the statutory requirements for service of process." (*Ibid*.)

*Sakaguchi* provides another example of proper service. The plaintiff's attorney mailed a statement of damages to the defendant, care of the litigation coordinator, along with a notice and acknowledgement of receipt form. (*Sakaguchi*, *supra*, 173 Cal.App.4th at p. 859.) The litigation coordinator signed and returned the notice and acknowledgement of receipt. (*Id*. at pp. 860–861.) The court concluded that "[t]his procedure complies with the statutory scheme for effective service on an inmate in a state prison." (*Id*. at p. 861.)

### 3. Methods of Service

*Sakaguchi* illustrates one of the four usual methods for serving process—that is, service by mail coupled with an acknowledgement of receipt in accordance with section 415.30. The other three usual methods for completing service within California are (1) personal delivery to the defendant or someone authorized by law to accept the summons on the defendant's behalf (§ 415.10); (2) delivery to someone else at the defendant's usual residence or place of business (§ 415.20); and (3) service by publication (§ 415.50). In addition, section 413.30 states: "Where no provision is made in this chapter or other law for the service of summons, the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court."

Thus, when none of the four usual methods of service is available, the trial court has the discretion to authorize service by another means.

For purposes of this appeal, we consider how service of process might have been effected through the sheriff's office, either on Dolihite personally or on the litigation coordinator as a person authorized by law to accept service on behalf of a prisoner. We also consider how service might have been completed by mail.

Section 14010.7 of the Department Operations Manual (2021) of CDCR (DOM) states: "Service of any documents used in civil proceedings (except subpoenas) is referred to as service of legal process in this section. The documents shall be handled in accordance with the provisions of this section anytime an employee receives such service." Service of legal process upon inmates is addressed in section 14010.7.4 of the DOM, which states that it does "not preclude the proper service of papers by a sworn peace officer escorted into a security area." (*Ibid*.) Section 14010.7.4 of the DOM also sets forth ways service on the inmate may be completed. First, "[s]taff may accept the papers from the process server and then complete the service on the inmate." (*Ibid*.) Second, "[a] sworn peace officer may be escorted into the security area to complete service of the papers." (*Ibid*.) In addition, "[i]f a request for service is received by mail, institution staff shall serve the papers and complete the verification of service. If a fee accompanied the request for service, the fee shall be returned with the verification of service." (*Ibid*.) Regardless of whether a litigation coordinator is physically handed process as a someone authorized by law to accept service on behalf of an inmate or is served by mail pursuant to section 415.30, the litigation coordinator has a duty to "forthwith deliver [the papers] to the prisoner, with a note thereon of the time of its service." (Pen. Code, § 4013, subd. (a).)

15.

II.     DENIAL OF CRANE'S RIGHT OF ACCESS TO THE COURTS

Crane contends he was denied his right of access to the courts and, therefore, the dismissal of his lawsuit should be reversed.  Our first step in analyzing this contention is deciding a legal issue about what test should be used to determine whether a denial of the right of access occurred.

A.     Test for Denial of Access

In *Lewis v. Casey* (1996) 518 U.S. 343 (*Lewis*), the United States Supreme Court considered what a prisoner must allege to state a civil rights claim based on a denial of the constitutional right of access to the courts.  (*Id*. at p. 346.)  The court concluded that a prisoner must allege actual injury to state such a claim.  (*Id*. at p. 349.)  In describing the actual injury requirement, the court stated a prisoner must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  (*Id*. at p. 353, fns. omitted.)

We recognize *Lewis* is distinguishable from the present case because it involved a lawsuit in which *the cause of action* alleged a denial of the right of access to the courts, not a lawsuit where a dismissal on procedural grounds (i.e., a failure to serve process within three years) arguably denied the plaintiff's right of access to the courts.  *Lewis* also is distinguishable because it addressed the *constitutional* right of access to the courts.  Here, we do not reach the constitutional questions because our analysis is based on the statutory right set forth in Penal Code section 2601, subdivision (d).  (See generally, *California Chamber of Commerce v. State Air Resources Bd.* (2017) 10 Cal.App.5th 604, 631, fn. 19 [under the constitutional avoidance doctrine, it is prudent to address a statutory ground to avoid reaching a constitutional ground].)  Despite these distinctions, we conclude the elements that must be alleged to state a federal civil rights claim provide guidance for defining the appropriate test for whether a denial of the statutory right of access occurred in this case.

16.

The elements of a federal civil rights claim include (1) actual injury, (2) official acts frustrating the litigation, and (3) a remedy that may be awarded as recompense that is not otherwise available in a future suit. (*Christopher v. Harbury* (2002) 536 U.S. 403, 413–414.) Adapting these elements to a denial of the statutory right to prosecute a civil action (Pen. Code, § 2601, subd. (d)), we conclude the prisoner must show (1) official acts frustrating the litigation and (2) an actual injury that satisfies the standard used in civil cases for a miscarriage of justice. To demonstrate actual injury, the prison must show the loss or impairment of a nonfrivolous cause of action. (*Christopher v. Harbury*, *supra*, at p. 416.) Such a showing entails describing the cause of action well enough to apply the nonfrivolous requirement and determine the cause of action is more than a hope. (*Ibid*.) In addition, to establish a miscarriage of justice, the prisoner must show it is reasonably probable that a result more favorable to him or her would have been reached in the absence of the denial of access. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)

B.    Application of Test

1.    *Actual Injury*

Here, the record establishes the actual injury element of the test for a denial of a prisoner's right of access to the courts. Crane lost his personal injury cause of action when the lawsuit was dismissed with prejudice. That cause of action easily qualifies as nonfrivolous because Dolihite plead guilty to assault with a deadly weapon. (See *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 205 [collateral estoppel effect of judgment of conviction in subsequent civil proceeding]; Evid. Code, § 1300.) Accordingly, Crane has shown it is reasonably probable that a result more favorable than the dismissal would have been reached if the lawsuit had not been dismissed.

17.

### 2. *Official Acts Frustrating the Litigation*

The next element we address whether official acts frustrated Crane's pursuit of the lawsuit against Dolihite—specifically, his attempts at service—and caused the dismissal. In conducting this inquiry, we conclude the term "official acts" includes the acts and omissions of prison officials, the superior court, and the Monterey County Sheriff's Office. In other words, this element of a denial of access contention is determined from the perspective of the inmate and the acts of various officials are not viewed in isolation.

First, we consider the combined impact of the superior court's statement that Crane "will have to make arrangements with the Sheriff Department at the county where defendant is located for service of plaintiff's complaint and summons" and the reaction of the Monterey County Sheriff's Office to Crane's attempt to have that office serve the summons and complaint on Dolihite. The superior court's statement was undoubtedly based on its understanding of a sheriff's statutory duty to serve process in civil actions (Gov. Code, § 26608) and its experience with the Kings County Sheriff's Office. Many prisoner lawsuits are filed in Kings County Superior Court and service on defendant prison officials often is completed by the sheriff's office. Typically, a sheriff's deputy personally delivers the summons and complaint (or writ) to the litigation coordinator at the prison and files a proof a service with the court,[4] a method that is consistent with the provisions in the DOM addressing service of process. Thus, the superior court's statement about making arrangements with the sheriff's office to serve process accurately

---

[4] As an example, in the nonpublished opinion *Foster v. Sexton* (Sept. 25, 2019, F078480) the sheriff's deputy (1) served the warden at Corcoran State Prison by personally delivering the writ to the litigation coordinator at the prison and (2) filed a proof of service on Judicial Council form POS-010 on October 9, 2018. The proof of service stated the litigation coordinator was authorized to receive service on behalf of the warden. We take judicial notice of the proof of service, which appears at page 61 of the clerk's transcript in that appeal. (Evid. Code, §§ 452, 459.)

18.

identified a procedure for completing service.[5]  The problem in this case arose because the court assumed the Monterey County Sheriff's Office would handle service of process in the same or a similar manner as the Kings County Sheriff's Office.

The Monterey County Sheriff's Office responded to Crane's request by returning his documents with a "Notice of Action Taken" informing Crane that "WE ARE UNABLE TO PROCESS YOUR REQUEST FOR THE REASON(S) INDICATED BELOW."  The only reason given stated:  "Please contact Soledad State Prison to serve inmates at their facilities."  We note that a preprinted part of the notice form referred to errors in the documents, but no errors in Crane's documents were identified in the notice sent to Crane.

Consequently, the sheriff's office refused to complete service by delivering the summons and complaint to the litigation coordinator at Salinas Valley State Prison as a person authorized by law to accept service on behalf of a prisoner (see Code Civ. Proc., § 416.90; Pen. Code, § 4013, subd. (a)) or, alternatively, serving Dolihite personally while being escorted by prison staff into a security area (DOM, § 14010.7.4).  Thus, the combined effect of the superior court's order stating Crane would have to make arrangements with the sheriff's office to serve the summons and complaint and that office's refusal to serve the documents had the combined effect of frustrating Crane's attempt to serve process on Dolihite.

Second, we consider the manner in which prison officials at the California State Prison, Los Angeles County handled Crane's request for permission to correspond with

---

[5]    The court's informing Crane that service could be completed using the sheriff's office did not violate the duty of impartiality and was consistent with its responsibility of treating litigants fairly.  It is ethically permissible for judges to accommodate self-represented litigants by explaining court procedures, such as service of process, so long as the court provides such guidance to all parties. (Rothman, et al., California Judicial Conduct Handbook (4th ed. 2017) § 2:28, pp. 99-100; see generally, *Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 809–810 [judge's responsibilities in communicating with self-represented litigants].)

19.

Dolihite. Other than informing Crane that his request was being forwarded to the litigation coordinator, Crane received no response. This lack of a response further frustrated Crane's attempt to serve Dolihite because the superior court informed Crane that he needed to obtain such permission to serve Dolihite by mail.[6] By requiring Crane to obtain permission, the superior court required him to do something that was beyond his control. The combined effect of the superior court's stating permission was necessary (regardless of whether it was true) and the failure of prison officials to respond to Crane had the actual effect of frustrating Crane's service of the summons and complaint.

Third, we consider the April 23, 2019 response of G. Lopez, a litigation coordinator at Salinas Valley State Prison, to Crane's mailing of the summons and complaint in an attempt to serve Dolihite. The litigation coordinator's letter advised Crane that the materials were being returned because of (1) "Improper Service" and (2) "the Litigation office does not serve or accept service for other inmates." The litigation coordinator's statement that the litigation office does not accept service for inmates is contrary to a literal reading of section 14010.7.4 of the DOM and, moreover, is contrary to the responsibilities imposed by Penal Code section 4013, subdivision (a) as interpreted by the court in *Sakaguchi*, *supra*,173 Cal.App.4th 852. Under the statute, the litigation coordinator "upon whom a paper in a judicial proceeding, directed to a prisoner in his or her custody, is served, shall forthwith deliver it to the prisoner, with a note thereon of the time of its service." (Pen. Code, § 4013, subd. (a).) Construing the word "shall" in

---

[6] For purposes of this appeal, we do not address whether section 3139 of title 15 of the California Code of Regulations, which requires inmates to obtain written authorization "to correspond" with any inmate held in a state or federal correctional facility, requires prior permission to serve a summons and complaint by mail. It may be that prison officials do not interpret "to correspond" to encompass the mailing of a summons and complaint to a litigation coordinator at the prison where the defendant inmate is incarcerated. We refrain from addressing this issue because no prison official has appeared in this lawsuit and taken a position about how the regulation is interpreted and provided a rationale for that interpretation.

"according to the context and the approved usage of language" (Pen. Code, § 7, subd. 16), we conclude "shall" denotes a mandatory obligation. (See *People v. Perez* (2021) 67 Cal.App.5th 1008, 1014 ["shall" is ordinarily construed as mandatory and its use in Pen. Code § 1473.7, subd. (b)(1) established a mandatory rule].) Accordingly, the litigation coordinator's refusal to deliver the summons and complaint violated Penal Code section 4013 and further frustrated Crane's attempts to serve Dolihite.

The foregoing circumstances adequately demonstrate that official acts and omissions have frustrated Crane's pursuit of the lawsuit against Dolihite. Specifically, those acts and omissions have impeded his attempts to serve Dolihite with the summons and complaint. Therefore, we conclude Crane has established the dismissal of his lawsuit for failure to effect service of process violated his statutory right of access to the court to prosecute a civil action. (Pen. Code, § 2601, subd. (d).)

D.     Harmonizing the Statutes

Next, we consider how the violation of an indigent prisoner's statutory right of access pursuant to Penal Code section 2601, subdivision (d) affects the calculation of the three-year period for service of process. Section 583.210, subdivision (a) requires a plaintiff to serve "a defendant within three years after the action is commenced against the defendant." A lawsuit "is commenced" when the complaint is filed. (*Ibid*.)

The calculation of the three-year period is subject to section 583.240, which lists four conditions that result in the exclusion of time from the three-year period. Two of those conditions are relevant to this litigation. First, time is excluded when "[t]he prosecution of the action or proceedings in the action was stayed and the stay affected service." (§ 583.240, subd. (b).) Second, time is excluded if "[s]ervice ... was impossible, impracticable, or futile due to causes beyond the plaintiff's control." (§ 583.240, subd. (d)). Ordinarily, these conditions "must be construed strictly against the plaintiff." (*Shipley v. Sugita* (1996) 50 Cal.App.4th 320, 326.) However, when an

21.

indigent prisoner establishes a denial of his statutory right of access to the courts, we conclude a strict construction is inappropriate. The statutory right of access to the courts, which has constitutional foundations, is more important that the procedural requirement established for the efficient operation of the courts. Accordingly, we conclude the statutory time limits for service should be construed to protect rather than deny the right of access. As a result, the time during which official acts frustrated the service of process and denied an indigent prisoner his statutory right of access to the courts qualifies as time during which service was "impracticable[] or futile due to causes beyond the plaintiff's control." (§ 583.240, subd. (d).)

Applying the foregoing statutory interpretation to the facts of this case raises several issues. Some of those issues need not be resolved because time excluded on other grounds supports the determination that the three-year period has not expired.

The complaint was filed on June 19, 2014, and the superior court dismissed the action five years and one week later, on June 26, 2019. A stay was in effect for one year, from May 2015 until May 2016. Therefore, that year is excluded pursuant to subdivision (b) of section 583.240. The stay might have been continued for another year until May 2017, but this is a question that need not be resolved. In January 2018, Crane submitted his CDCR form 22 and sent a letter to the warden seeking permission to correspond with Dolihite for purposes of pursuing this lawsuit. As discussed earlier, the lack of a response to Crane's request, the sheriff's office refusal to serve Dolihite, and the litigation coordinators refusal to accept service pursuant to Penal Code section 4013, subdivision (a) had the combined effect of frustrating Crane's attempts to serve Dolihite. This period of frustration, from January 2018 through the dismissal in June 2019, lasted 17 months. When the one-year stay and this 17-month period are excluded from the calculation of the time passed since the filing of the complaint, only two years and seven months count against the three-year period.

Consequently, we conclude the three-year period for service of process has not expired and dismissal is not mandatory under section 583.250, subdivision (b). Accordingly, the dismissal of must be reversed.

C.    Judicial Relief

The last subject we address is the appropriate relief on appeal.  A reversal and remand are necessary and, therefore, the question presented is what directions should be given to the superior court for conducting those further proceedings.  The statutory authority for such directions includes section 43, which states that an appellate court "*may* affirm, reverse, or modify any judgment or order appealed from, and *may* direct the proper judgment or order to be entered, or *direct … further proceedings to be had*." (Italics added.)  Section 906 defines the powers of a reviewing court in a similar way, stating the court "may, if necessary or proper, direct … further proceedings to be had." Under these provisions, our task is to determine what further proceedings on remand are "necessary or proper."  (§ 906.)

In exercising the discretionary authority granted by sections 43 and 906, we consider whether Crane is eligible for the measures that may be implemented to protect an indigent prisoner's right of meaningful access to the courts.  (*Smith*, *supra*, 38 Cal.App.5th at p. 467.)  To be eligible, Crane must establish (1) his indigency and (2) the bona fide nature of his personal injury lawsuit.  (*Id*. at p. 466.)

We conclude Crane has established both elements.  First, in September 2019, Crane submitted a request to waive court fees on mandatory Judicial Council form FW-001, which this court granted.  The information in Crane's request is sufficient to show he qualifies as indigent for purposes of obtaining a discretionary measure to protect his right of access to the courts.  Second, Crane has established that his civil action is bona fide based on Dolihite's guilty plea and that it seeks relief for nontrivial injuries resulting

23.

from being stabbed in the neck. Accordingly, we conclude Crane is eligible for measures that protect the right of access to the courts.

One of the specific discretionary measures that might be implemented to resolve the problem of serving process on another inmate is the appointment of counsel for Crane. (See *Smith*, *supra*, 38 Cal.App.5th at p. 467 [list of eight discretionary measures available to trial courts]; see *Yarbrough v. Superior Court*, *supra*, 39 Cal.3d at p. 207 [power of trial court to appoint attorney to represent an incarcerated civil *defendant*].) The other specific measures do not apply to the problem of service; however, the general statement that a court may implement "other innovative, imaginative procedures" (*Wantuch v. Davis*, *supra*, 32 Cal.App.4th at p. 793; *Smith*, *supra*, at p. 467) allows the consideration of ways to complete the service of process other than appointing an attorney.

### 1.    *Appointment of Counsel*

Other ways of completing service of process are significant because, as a practical matter, it may be difficult to appoint an attorney to represent Crane. In particular, the superior court might be unable to find an attorney willing to accept an appointment—either on a pro bono basis or on a contingency fee or other arrangement acceptable to both Crane and the attorney. We note the probability of locating an attorney willing to accept a pro bono appointment might increase if the appointment is not for the entire case. The self-help website maintained by the California's judicial branch describes limited-scope representation, which sometimes is called "unbundling" or "discrete task representation," and involves an attorney handling only one or a few aspects of a case. (<https://www.courts.ca.gov/1085.htm> [as of Oct. 18, 2021].) Thus, the discretionary measures available to the trial court include appointing a willing attorney for the limited purpose of effecting service of process.

In sum, because of the potential difficulties in appointing counsel for Crane, even for the limited purpose of completing service, our directions for further proceedings on remand will not require, but do not foreclose, appointing counsel to resolve the problem of service of process. In other words, the superior court's discretionary authority includes other measures that can be used to complete service of process and effectuate Crane's statutory right of access to the court.

### 2. Service by Mail by the Clerk's Office

Another, simpler procedure available to the trial court is to direct the clerk of court to effect service by mailing a summons and the complaint to the litigation coordinator at the prison where Dolihite is being held in accordance with the requirements of section 415.30. Those requirements include sending two copies of a Notice and Acknowledgement of Receipt–Civil (mandatory Judicial Council form POS-015) and "a return envelope, postage prepaid, addressed to the sender." (§ 415.30, subd. (a).) Because the litigation coordinator at Salinas Valley State Prison previously refused to accept service on behalf of Dolihite, an order or cover letter could be included (1) referring to the mandatory obligation under Penal Code section 4013, subdivision (a); (2) stating that subdivision was interpreted in *Sakaguchi*, *supra*, 173 Cal.App.4th 852, as applying to litigation coordinators at a state prison; and (3) requesting the litigation coordinator to serve the papers on Dolihite and complete and return the related paperwork to the clerk of court.

### 3. Other Methods of Service

Another possibility is for the superior court to invoke its authority under section 413.30 and "direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court." The court might be able to identify an innovative method for

effecting service of the summons and complaint and section 413.30 provides the statutory authority for implementing that method.

        *4.*     *Summary*

There are multiple ways the superior court could ensure that service of process is completed, and this personal injury lawsuit moves forward. We will not direct the court to implement a particular measure. Instead, we will direct the court to adopt a measure that accomplishes service of the summons and complaint. That measure may be the appointment of counsel, service by the clerk of court pursuant to section 415.30, or some other measure, so long as the measure is effective in achieving service.[7]

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings that accomplish service of the summons and complaint and are not inconsistent with this opinion. As no respondent appeared in this case, no costs on appeal are awarded.

                                                     FRANSON, J.

WE CONCUR:

DETJEN, ACTING P. J.

SMITH, J.

---

[7] We recognize further difficulties may arise in both the prosecution and the defense of this action. Future difficulties, and how they should be resolved to protect each inmate's right of access to the courts, are necessarily beyond the scope of this opinion.