Filed 11/2/23  Sullivan v. State Department of State Hospitals CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| MANSE SULLIVAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE DEPARTMENT OF STATE HOSPITALS,<br><br>Defendant and Respondent. | F085270<br><br>(Super. Ct. No. 18CECG04118)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Manse Sullivan, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Lisa A. Tillman and Katherine J. Grainger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Levy, J. and Meehan, J.

Appellant Manse Sullivan appeals the trial court ruling granting Respondent State Department of State Hospital's (DSH) motion for summary judgment, ending his action challenging a regulation prohibiting patients of state hospitals from possessing various devices that can access the internet. Sullivan also challenges the trial court's denial of his request for the appointment of counsel. We affirm both rulings issued by the trial court.

**PROCEDURAL AND FACTUAL SUMMARY**

In 2006, a jury concluded Sullivan was a sexually violent predator (SVP) and was committed to a state hospital for an indefinite period of time. Sullivan is now housed at Coalinga State Hospital (Coalinga). Sullivan is before this court after challenging a regulation governing the types of electronic devices individuals in state hospitals can possess. Besides raising various constitutional challenges, Sullivan also believes the changes to the subject regulation were not properly enacted under the Administrative Procedures Act (APA).[1]

On December 22, 2017, DSH sent a notice to each person who had made a request for notice of its intention to pursue regulatory amendments and to make findings supporting the conclusion an emergency required the amendment of Title 9 of the California Code of Regulations, section 4350.[2] The notice included the proposed regulatory language, expanding the definition of what would be considered prohibited electronic devices to include those with media storage and media burning capabilities. The notice also identified the reasons why DSH was pursuing this emergency action.

On or about January 2, 2018, DSH filed the rulemaking package with the Office of Administrative Law (OAL), including the text of the amended rule, confirmation that the five day emergency notice was sent, and a list of 83 commenters, with their summarized

---

[1] This summary is mostly presented in chronological order showing when Sullivan initiated his challenge to the regulatory change.

[2] All further statutory references will be to the California Code of Regulations, unless otherwise specified.

comments and the DSH's responses. As part of the package provided to OAL, DSH prepared a notice stating its belief the proposed amendments were " 'necessary on an emergency basis for the immediate preservation of the public peace, health and safety, or general welfare.' " The notice further explained that with access to a broad range of devices with digital memory storage and/or digital media burning capability, patients could virtually distribute child pornography, have access to individuals who could be harmed, violate copyright laws, and/or access information about a DSH facility's physical layout. To support its belief an emergency was present, DSH stated 11 patients had been arrested in 2017 for possessing child pornography, and that two to three new child pornography cases were reported each month within their facilities, requiring investigation. The notice also recognized that technology had significantly advanced, resulting in a patient's ability to possess massive amounts of data via USB drives and other formats not addressed in the original version of section 4350, making it possible to virtually access, view, distribute, and secrete illicit materials as well as provide an opportunity to communicate with past and potential victims. On January 11, 2018, OAL approved the emergency amendments on an interim basis, to be effective between January 12, 2018, and July 12, 2018.

On January 16, 2018, and January 18, 2018, two separate memorandums were sent out by the Fresno County District Attorney's Office and the director of Coalinga informing all Coalinga patients and detainees of the timeline for implementing the emergency amendments to section 4350. An "amnesty/grace period" for patients to voluntarily relinquish their prohibited electronic devices, was provided from January 19, 2018, to January 28, 2018. On January 27, 2018, Sullivan voluntarily relinquished a number of items that were listed by Coalinga as falling within nine separate categories. On January 30, 2018, after the grace period ended, additional items were then confiscated from Sullivan during a hospital-wide search.

Sullivan filed with this court a request for a writ, seeking mandate, prohibition, and declaratory relief, on April 24, 2018, which was denied on August 31, 2018, for failing to exhaust administrative and/or legal remedies. (See *Sullivan v. California Department of State Hospitals*, F077382.) Sometime during August 2018, DSH commenced the regular rulemaking process to approve the section 4350 amendments.[3] OAL eventually approved the amendments to section 4350, through this regular rulemaking process, effective February 5, 2019.

Sullivan filed a petition challenging the amendment of section 4350 with Coalinga on September 17, 2018, which was denied on September 24, 2018.[4] On November 1, 2018, Sullivan filed a petition for a writ of habeas corpus in the trial court, challenging the amended section 4350. The petition sought a writ of mandate and/or prohibition, and alleged five separate causes of action as follows:

1.      First cause of action for a writ of mandate. This cause of action alleged each named respondent[5] had "a clear, present and expressed ministerial duty to comply with the requirements of the APA, Government Code section 815.6; and the First and Fourteenth Amendment[s], Substantive Due Process Clause, as well as the Equal Protection Clause."

---

[3]      On June 21, 2018, OAL re-adopted the emergency amendments on an interim basis, effective July 12, 2018, to October 11, 2018. On October 4, 2018, the second re-adoption of the emergency amendments was approved by OAL, effective October 11, 2018, to January 10, 2019.

[4]      The date on the letter denying Sullivan's petition is September 24, 2016. We presume this was a typographical error, since it is in direct response to Sullivan's petition dated 2018.

[5]      In his petition and in his briefing to this court, Sullivan refers to various respondents whose actions he contends are at least partly responsible for his alleged injuries. Only DSH is a named party in the action, and the only respondent before this court.

2.      Second cause of action seeking declaratory relief.  This cause of action asked the court to define the responsibilities each respondent owed when implementing the subject regulation.

3.      Third cause of action alleging first amendment violations.  Sullivan alleged that by limiting his use of electronic devices because of violations committed by others, DSH violated his freedom of expression.

4.      Fourth cause of action alleging a violation of Sullivan's right to equal protection.  This cause of action alleged Sullivan's civil liberties were impacted due to his status as an SVP.

5.      Fifth cause of action alleging a violation of the doctrine of stare decisis.  This cause of action alleged DSH failed to follow the law applicable to SVP's who are civil detainees and not prisoners.

Sullivan concluded his petition by asking the court to grant his request for a writ of mandate and/or prohibition, and for declaratory relief.  Sullivan further asked the court to vacate any authorities denying him or others from the right to purchase electronic devices that can connect to the internet.  Finally, Sullivan sought compensation for any property that was damaged, destroyed or made inoperable when transported to a storage facility.

After a demurrer and a separate request for a judgment on the pleadings brought by DSH were unsuccessful, DSH filed an answer to the petition on November 27, 2019. The answer denied the material allegations of the petition and raised eight separate affirmative defenses.  On October 2, 2020, Sullivan made a formal request for the appointment of counsel to assist him in pursuing the petition.  The trial court denied this request in January 2021, stating Sullivan failed to provide evidence he had a *bona fide* personal or property interest at stake.

Thereafter, on June 9, 2022, DSH filed a motion for summary judgment, and/or in the alternative, a motion for summary adjudication.  The trial court issued a tentative

5.

ruling prior to oral argument on the motion. After addressing the various constitutional and procedural violations alleged by Sullivan, the court stated its conclusion Sullivan failed to produce evidence disputing evidence provided by DSH showing the emergency rulemaking processes and regular rulemaking process were executed properly. Because these claims were at the core of each cause of action, the court stated its tentative conclusion the motion for summary judgment should be granted.

Following oral argument on September 7, 2022, the tentative ruling was adopted as the final judgment by the court. After a notice of entry of judgment was served on October 12, 2022, Sullivan filed a timely notice of appeal on November 14, 2022.

## DISCUSSION

Sullivan challenges two separate rulings by the trial court in this appeal. In addition to the ruling on the motion for summary judgment, Sullivan also challenges the court's denial of his request for the appointment of counsel. We address this latter issue first.

## I. The Request for the Appointment of Trial Counsel

Several months after DSH answered the petition, Sullivan made a motion requesting the appointment of counsel.[6] Decisions in California identify the appointment of counsel as a measure available to a trial court to ensure an indigent prisoner is provided meaningful access to the courts. The availability of such a measure has been extended to civil detainees as well, "[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is [also] entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209.) However, neither the California Constitution nor Penal Code section 2601, subdivision (d) have been interpreted to require the appointment of counsel for an indigent plaintiff litigant as a

---

[6] Again, at this point, the court had already rejected DSH's demurrer and motion for judgment on the pleadings.

6.

matter of right. (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483.) Instead, the choice of measures available to safeguard a prisoner's right to meaningful access to the courts in a civil action is committed to the exercise of a trial court's discretion. (*Id*. at pp. 1483–1484; *Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 468.)

On review, an appellate court must determine whether the exercise of discretion considered the statutory right to meaningful access to the courts "to prosecute bona fide civil claims." (*Apollo v. Gyaami*, *supra*, 167 Cal.App.4th at p. 1484.) When exercising discretion, a trial court should first consider whether the appellant is indigent, and second whether the lawsuit involves a bona fide threat to a personal or property interest.[7] (*Smith v. Ogbuehi, supra*, 38 Cal.App.5th at p. 466.) If the answer to both questions is yes, then the court must consider what measures might be available to protect the appellant's access to the courts. (*Id*. at pp. 466–467.)

When issuing its tentative ruling, the trial court accepted the fact Sullivan was indigent. The court then stated there was no evidence in the record that Sullivan had a bona fide personal or property interest at stake, before denying the request for the appointment of counsel. We agree with the trial court's conclusion that Sullivan failed to establish a *bona fide*[8] interest existed, as no evidence was provided with the motion establishing or even suggesting Sullivan had a bona fide personal or property interest. Because Sullivan failed to meet this burden of proof in the motion, we find no abuse of discretion.

---

**7**    Many federal courts define this standard differently looking to whether "exceptional circumstances" exist rather than whether a bona fide case exists, when determining the need to appoint counsel for an indigent civil litigant. (E.g., *Byrd v. Maricopa County Board of Supervisors* (9th Cir. 2017) 845 F.3d 919, 925.)

**8**    Often defined as genuine, authentic, or real. (See Merriam-Webster Dictionary, "bona fide" <https://www.merriam-webster.com> [as of Oct. 4, 2023].)

## II.    The Motion for Summary Judgment

While the motion brought by DSH asked for either a summary judgment, or a summary adjudication, the court granted DSH's motion for summary judgment, resulting in a resolution of the entire case against Sullivan.  One argument Sullivan has made to challenge the trial court's ruling on the motion for summary judgment is that the motion was a last ditch effort on the eve of trial after having lost on a demurrer and a separate motion for a judgment on the pleadings.  These motions have entirely different purposes and the denial of one does not predict how the other will be resolved.

A demurrer and a motion on the pleadings focus on the adequacy of the pleadings, asking whether enough has been alleged to allow a case to go forward.  (See Code Civ. Proc., §§ 430.80, 438.)  The allegations of a pleading, at this stage, are given great deference.  For instance, a demurrer is used only to challenge defects that appear on the face of the pleading under attack.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  If the essential elements of a valid cause of action are alleged, the pleading will survive a general demurrer.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal. 4th 26, 38–39.)  The court does not go beyond the pleading to consider the actual facts supporting the allegations.

A motion for summary judgment goes beyond the pleadings and must be resolved on the actual facts presented to the trial court.  Summary judgment is granted when "there is no triable issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  Again, the focus is on facts presented to the court, not just unsupported allegations in a pleading.  (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  Therefore, a beneficial ruling on the adequacy of allegations in a pleading, does not automatically suggest a similar ruling will result once actual facts are put before the trial court.

## A.    Standard of Review Following a Summary Judgment

This court uses a de novo standard to review the trial court's decision to grant summary judgment.  (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)  As a result, we are not bound by the trial court's stated reasons or rationales.  (*Ibid.*)  "In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party.  In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are accepted as true."  (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001.)  " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' "  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249–1250.)

Our de novo review applies the same standard as used by the trial court.  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.)  Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves …." ' "  (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228.)  We " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party."  (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843; see also *Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 300.)

As with any other appeal, we start with the presumption the judgment is correct.  (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.)  " '[I]t is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' "  (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

### B. Application

#### 1. Fundamental Flaws in Sullivan's Opposition to the Motion

Any party may move for summary judgment if they believe the action has no merit or that there is no defense to the action or proceeding. (Code Civ. Proc., § 437c, subd. (a)(1).) Among the documents a moving party must provide with their motion is "a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed." (*Id*. at subd. (b)(1).) In response, a party opposing a motion for summary judgment must then provide:

> " … a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (*Id*. at subd. (b)(3).)

DSH provided a separate statement of undisputed facts with their moving papers. Among the material facts listed, the separate statement addressed the rulemaking process utilized by the DSH when amending section 4350, first through the emergency rulemaking process, then later using the regular rulemaking process. Each statement of material fact in the separate statement was supported by evidence showing how the rulemaking process was implemented. DSH's separate statement also addressed the fact that after the emergency amendment to section 4350 was made, Sullivan voluntarily relinquished various devices in his possession. The separate statement also established how the emergency amendment to section 4350 was still in effect when employees at Coalinga confiscated additional devices on January 30, 2018, which Sullivan failed to relinquish earlier.

10.

In response to the DSH's motion for summary judgment, Sullivan submitted his opposition to the motion including a memorandum of points and authorities, and various documents attached as exhibits, addressing a public records act request, the denial of the department's earlier demurrer, various communications from the department regarding the implementation of the newly amended section 4350, and another asking whether Sullivan wanted his devices sent to a third party.  Neither a response to DSH's separate statement, or a new separate statement in response were submitted by Sullivan addressing the material facts and/or the supporting evidence provided by DSH on the question of how the rule changes were implemented or whether the confiscation of his devices was authorized.

> " '[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citation] 'Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to [that] cause of action ….' (Code Civ. Proc., § 437c, subd. (p)(2); [citation].) The party opposing summary judgment 'shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists ….' (§ 437c, subd. (p)(2).) A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Bacoka v. Best Buy Stores, L.P.* (2021) 71 Cal.App.5th 126, 132.)

" 'The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process.  "Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for … summary judgment to determine quickly and efficiently whether material facts are disputed." ' " (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 415–416.)  Once a trial court determines a moving party has met its

11.

initial burden of proof, Code of Civil Procedure, section 437c, subdivision (b) allows a court to exercise its discretion to grant the motion for summary judgment if the opposing party fails to dispute the material evidence presented by the moving party. (*Kojababian*, at p. 416.)

After acknowledging the responsibilities of the parties when addressing a motion for summary judgment, and the fact the burden of proof does not shift to the opposing party until the moving party has met its burden, the court stated:

> "In the case at bench, [Sullivan] has failed to submit a separate statement indicating what facts, if any, [Sullivan] disputes and citing to evidence in support of that dispute…. [Sullivan] has attached evidence to the [m]emorandum filed in opposition to the motion for summary judgment and the court has considered those documents in determining whether [Sullivan] has presented evidence to dispute material facts established by [DSH]."

Again, for each cause of action alleged, the court found Sullivan failed to present evidence to dispute the material facts presented by DSH. We find no error given the trial court's acknowledgment of the standard of review and the necessity of proof, especially when indulging Sullivan's lack of a separate statement by considering documents attached to his memorandum of points and authorities.

### 2. The Changes to Section 4350 Were in Effect When Sullivan's Items Were Confiscated

Again, one of the stated reasons given by the trial court when granting DSH's motion for summary judgment was that Sullivan failed to provide any evidence disputing a proper use of the rulemaking process, as defined by the APA, when amending section 4350.

The adoption, amendment, or repeal of emergency regulations in California are governed by Government Code section 11346.1. This provision delineates the procedures an agency must employ to promulgate an emergency regulation, and further provides a definition for what will qualify as an emergency. (Gov. Code, § 11346.1,

12.

subds. (a), (b)(2).) Agencies may not, however, rely on this process indefinitely. Specifically, Government Code section 11346.1, subdivision (e) provides:

> "No regulation, amendment, or order of repeal initially adopted as an emergency regulatory action shall remain in effect more than 180 days unless the adopting agency has complied with Sections 11346.2 to 11347.3, inclusive, either before adopting an emergency regulation or within the 180-day period. The adopting agency, prior to the expiration of the 180-day period, shall transmit to the office for filing with the Secretary of State the adopted regulation, amendment, or order of repeal, the rulemaking file, and a certification that [Government Code s]ections 11346.2 to 11347.3, inclusive, were complied with either before the emergency regulation was adopted or within the 180-day period."

Case law has recognized the validity of using the emergency rulemaking process "on an interim basis during the lengthy proceedings necessary for the preparation of final regulations." (*Doe v. Wilson* (1997) 57 Cal.App.4th 296, 307, citing *Sonoma County Organization etc. Employees v. County of Sonoma* (1991) 1 Cal.App.4th 267, and *Schenley Affiliated Brands Corp. v. Kirby* (1971) 21 Cal.App.3d 177.)

Sullivan argued both in the trial court and here that the confiscation of his devices was not warranted under the emergency amendment of section 4350, because the rulemaking process was not complete. In fact, Government Code section 11346.1, subdivision (d) specifically states an emergency regulation "shall become effective upon filing or upon any later date specified by the state agency."

Sullivan, in his opposition, failed to challenge the validity of the process used by DSH to implement the emergency amendment to section 4350. Sullivan also failed to properly challenge the evidence establishing the validity of the two readoptions of the emergency amendments, as well as the regular amendment of section 4350, making the changes permanent. The trial court's conclusion Sullivan failed to dispute DSH was acting within its legal authority when confiscating his electronic devices is supported by the record.

### 3. The Legal Claims Raised in Each Cause of Action

The trial court also addressed the allegations DSH violated various constitutional rights owed to Sullivan. While these allegations underly the overall request for a writ of mandate, each theory was also raised in the context of separate causes of action. For purposes of clarity, we address these claims in the context of each cause of action alleged.

*First Cause of Action*

This cause of action requesting a writ of mandate alleged DSH through its agents had "a clear, present and expressed ministerial duty to comply with the requirements of the APA, Government Code section 815.6; and the First and Fourteenth Amendment[s], Substantive Due Process Clause, as well as the Equal Protection Clause." With respect to the APA claim, which is linked to the emergency amendment of section 4350, essentially raising a procedural due process argument, again Sullivan failed to dispute the fact DSH properly amended section 4350, meeting all the procedural requirements, and establishing the amendment was needed to address an emergency.

Sullivan's contention DSH had a ministerial duty to comply with Government Code section 815.6 also fails for two separate reasons. First, this allegation is tied to the claim section 4350 was improperly amended. That issue has already been resolved against Sullivan. Second, section 815.6 is part of the Government Claims Act (GCA), which governs tort claims brought against a governmental entity. Under Government Code section 911.2, subdivision (a), a cause of action falling within the parameters of the GCA must first be presented "not later than six months after the accrual of the cause of action." Government Code section 945.4 also provides:

> "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required … until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board …."

14.

The "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.) Sullivan has effectively conceded that no claim was ever filed. As a result, any potential claim governed by GCA was forfeited.

Sullivan's first amendment challenge focuses on restrictions placed on him as a civil detainee because other inmates or detainees might use access to the internet to spread child pornography. Again, Sullivan submitted no challenge to formally dispute DSH's statement of reasons for the change, nor to challenge the reasonableness of DSH's effort to prevent illicit activities. In addition, case law has held restrictions imposed for legitimate, nonpunitive purposes are permitted as long as they are not excessive in relation to that purpose. (*Bell v. Wolfish* (1979) 441 U.S. 520, 539.)

Following our de novo review, we find no error in the trial court's conclusion. We specifically agree that because access to other electronic devices that lack internet or wireless communication capabilities was still available, and because patients could still use in-house computer labs with staff supervision, First Amendment rights were not violated.

With respect to Sullivan's claim that his Fourteenth Amendment rights have been violated, two separate rights are implicated. First, Sullivan raises a procedural due process claim arguing the amendment to section 4350 was flawed. Again, Sullivan failed to dispute the evidence presented on behalf of DSH supporting the conclusion both the emergency and regular rule making procedures were followed. Furthermore, DSH's separate statement of undisputed facts state Sullivan along with other detainees at Coalinga, received notice of the proposed changes before they were made. Without putting these facts into dispute, allegations that procedural due process rights were violated cannot survive. (See *Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 320.)

The second part of the Fourteenth Amendment challenge involves Sullivan's claim that his substantive due process rights have been violated. The substantive component of the fourteenth amendment bars arbitrary or wrongful government actions, regardless of the fairness of the procedures used to implement those actions. (*Foucha v. Louisiana* (1992) 504 U.S. 71, 72.) While SVPs may be confined for nonpunitive purposes, they " 'have a substantive due process right to be free from restrictions that amount to punishment.' " (*In re Robinson* (2017) 19 Cal.App.5th 247, 255.) However, these detainees may be subject to institutional regulations that have a legitimate, nonpunitive government purpose that were not excessive. (*Ibid.*) This court has already held the restrictions imposed by section 4350 can result in the confiscation of property if it advances a legitimate interest of the hospital, thus not violating substantive due process. (See *In re Robinson*, at p. 255.) We see no reason provided in the record why we should reach a different conclusion in this case. Without disputing the facts presented by DSH that there was a legitimate, nonpunitive reason for the amendment, the court's decision to grant summary judgment on this claim was appropriate.

The final theory raised by Sullivan in the first cause of action to obtain a writ of mandate alleges a violation of his right to equal protection under the Fourteenth Amendment. The trial court found Sullivan failed to establish he was a member of an identifiable class, and cited case law holding sex offenders are not a suspect class for purposes of equal protection. (*U.S. v. LeMay* (9th Cir. 2001) 260 F.3d 1018, 1030; see also *Williams v. Castro* (Eastern Dist. Cal. 2021) WL1045741.) We agree with this conclusion.

*Second Cause of Action*

The second cause of action seeks declaratory relief. Sullivan specifically seeks a declaration for himself, and "all other[] similarly situated patients," regarding the various claims he has already made regarding the equal protection clause and the failure to abide by the requirements of the APA. The trial court rejected this claim stating:

16.

> "[Sullivan] has not presented evidence to dispute that the amendment was adopted properly under the APA emergency rulemaking procedures and subsequently under the regular rulemaking procedures. As such, there is no present controversy for the court to make such a declaration."

Following our de novo review, we agree with this conclusion. Furthermore, while not specifically stated in connection with the ruling on this second cause of action, we also agree the court was correct to conclude Sullivan, as a self-represented litigant, was unable to bring this action on behalf of other persons similarly situated as a matter of law. It is well settled that a person appearing propria persona may represent his or her own interests in a legal proceeding but may not act as attorneys for others unless they are an active member of the state bar. (*Drake v. Superior Court* (1994) 21 Cal.App.4th 1826, 1830.)

*Third Cause of Action*

The third cause of action alleges a violation of Sullivan's First Amendment rights. Specifically, Sullivan believes the restrictions on his freedom of expression and right to use electronic devices is not narrowly tailored and is based on conduct of others, not on his own. Sullivan also alleges another violation of his substantive due process rights based on this infringement of his First Amendment rights.

The court simply concluded Sullivan failed to produce evidence to dispute the fact the adoption of the section 4350 amendments did not violate his First Amendment rights. We agree with this statement, and further note the discussion above on the allegation Sullivan's First Amendment rights were violated and justified the issuance of a writ of mandate. Again, restrictions imposed for legitimate, nonpunitive reasons are permitted as long as they are not excessive in relation to that purpose. (*Bell v. Wolfish*, *supra*, 441 U.S. at p. 539.)

*Fourth Cause of Action*

In the fourth cause of action Sullivan alleges a violation of the equal protection clause. This claim focuses on Sullivan's status as an SVP. Sullivan also raised violations

of his right to due process as connected to this equal protection claim. Again, the court concluded Sullivan failed to dispute evidence DSH provided to show his equal protection rights had not been violated.

We again agree. However, we also note, Sullivan's equal protection claim fails on legal grounds as well. The equal protection clause requires the state to treat all persons similarly situated alike or, conversely, to avoid all classifications that are " 'arbitrary or irrational' and those that reflect ' "a bare … desire to harm a politically unpopular group." ' " (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 510, citing *City of Cleburne v. Cleburne Living Ctr.* (1985) 473 U.S. 432, 446, 447, superseded by statute on other grounds.) Sullivan failed to provide any evidence putting into dispute the fact the restrictions stated in section 4350 applied to all patients and detainees housed in DSH facilities, not just those classified as SVPs.

*Fifth Cause of Action*

The final cause of action pled by Sullivan alleges a failure to correctly apply the doctrine of stare decisis. This cause of action mostly restates the same theories alleged earlier in the petition. When ruling on this cause of action, the court stated:

> "The substance of [Sullivan's] cause of action … challenges the due process afforded to [Sullivan] in the adoption and implementation of the amendment to section 4350.… [Sullivan] has not presented evidence to dispute that the adoption and/or implementation of the amendment to section 4350 was not in conformity to his procedural and substantive due process right under the Fourteenth Amendment."

We agree with the trial court's conclusion on the viability of this cause of action.

In conclusion, following our de novo review, we conclude the record supports the trial courts order granting DSH's motion for summary judgment.

## III. Sullivan's Recent Requests for Judicial Notice

On August 8, August 14, and August 17, 2023, Sullivan filed three separate requests for judicial notice of documents attached to those requests. By order of this

court filed on August 30, 2023, this court deferred any decision on those three separate requests until we considered Sullivan's appeal on its merits.

A "reviewing court may take judicial notice of any matter specified in [s]ection 452." (Evid. Code, § 459, subd. (a).) However, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3, partially overruled on other grounds involving jurisdiction as noted in *Halyard Health Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1074.) Generally, appellate courts consider only matters that were part of the record at the time the judgment was entered, unless exceptional circumstances exist justifying a deviation from that rule. (*Ibid*.)

We deny each request for different reasons. Appendix D to the first request, and appendix H to the second request are already part of the appellate record, and therefore there is no need to grant a request for judicial notice to make them part of the record now. Appendix F to the first request and appendix G to the second request consist of newspaper or internet based articles and writings that do not come within the parameters of Evidence Code section 452. Appendix F to the third request for judicial notice is a memorandum from 2008 from a patient rights activist, and is not relevant to these proceedings. (See *Towns v. Davidson* (2007) 147 Cal.App.4th 461, 473, fn. 3, declining to take judicial notice of irrelevant filings in another appeal.)

The remaining document, appendix E to the first request for judicial notice, was potentially relevant and judicially noticeable. This item contains statistics from the California Health and Human Services Agency/Office of Law Enforcement, providing statistics on crimes or offenses committed at Coalinga in 2017. However, this document should have been presented to the trial court first and not here on appeal. The trial court was in the best position to consider whether this document was of benefit to Sullivan's

opposition to the motion for summary judgment.[9]  (See *Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 444, fn. 3.)

Sullivan's three requests for judicial notice are denied.

## <u>DISPOSITION</u>

The judgment is affirmed.

---

[9]    We note, even if we were to judicially notice Appendix E, there would have been no alteration in our decision in this case.